Deborah L. KEDY, Legal Representative for the Estate of Brian Scallion et al.

v.

A.W. CHESTERTON CO. et al.

In re Asbestos Litigation.

Nos. 2005–332–M.P., 2005–319–M.P.

Supreme Court of Rhode Island.

May 9, 2008.

Gerald Petros, Esq., Providence, for General Electric, petitioner.

Robert J. Quigley, Esq., Providence, for Lincoln Electric and Hobart Bros., petitioners.

Garland Cassada, Esq., Charlotte, NC, for Garlock Sealing Technologies, LLC., petitioner.

Donald A. Migliori, Esq., Providence, for respondents.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## O P I N I O N

Justice SUTTELL, for the Court.

We issued a writ of certiorari to consider the applicability of the doctrine of *forum non conveniens* in Rhode Island jurisprudence. The petitioners/defendants sought review of Superior Court orders denying their motions to dismiss in thirty-nine civil actions filed in Rhode Island by Canadian residents. For the reasons set forth in this opinion, we join forty-six of our sister states and the federal courts by formally recognizing the doctrine of *forum non conveniens*. We vacate, therefore, the orders of the Superior Court.

## I

### Facts and Procedural History

The issue before us arises out of thirty-nine cases filed in the Superior Court that allege personal injury and wrongful death caused by workplace exposure to products

containing asbestos.[1] The plaintiffs are all Canadian residents,[2] and their employment, exposure, injuries, and treatment occurred in Canada. The several actions were filed against various corporations, all of which conduct business in Rhode Island. None of the remaining[3] corporate defendants, however, either is incorporated in Rhode Island or has its principal place of business in the state.

On October 27, 2004, defendant General Electric Company moved to dismiss the twenty-three asbestos actions then before the Superior Court based on the doctrine of *forum non conveniens*. Several other defendants joined General Electric's motion to dismiss.[4] Subsequently, sixteen additional similarly situated plaintiffs filed asbestos actions in Rhode Island, after which defendants moved to dismiss those cases as well.

On May 27, 2005, the Superior Court filed a consolidated decision that denied defendants' motions to dismiss. Defining the doctrine of *forum non conveniens* as "allow[ing] a court to dismiss a case when a chosen forum—despite the existence of jurisdiction and venue—is so inconvenient that it would be unfair to the defendant to conduct its defense of the claim in that location," the trial justice explained that Rhode Island was one of the few states in which neither its Legislature nor the state's highest court had recognized the doctrine of *forum non conveniens* generally. She noted, however, that the General Assembly had adopted the doctrine for the specific circumstance of child-custody cases when it enacted the Uniform Child Custody Jurisdiction Act (UCCJA) in 1978. The trial justice began her analysis by noting that the court had jurisdiction over the case and that venue was proper. The trial justice also discussed the status of asbestos litigation in Rhode Island, finding that "no litigation crisis exists" at present, that the court was not "mired in asbestos

1. In an administrative order dated January 29, 1996, the Presiding Justice of the Superior Court directed a single justice to handle all pending and future asbestos-related litigation in Rhode Island.

2. Two of the plaintiffs are United States citizens residing in Canada.

3. Two of the original defendants, P.I.C. Contractors, Inc., and Packings and Insulations Corporation, were Rhode Island corporations with their principal places of business in Rhode Island, but they were dismissed from the case before the petitions for writs of certiorari were filed. Based on the record before us, the remaining codefendants are: A.W. Chesterton Company; The Anchor Packing Company; Asarco Incorporated; Aventis Cropscience USA, Inc. (successor to Amchem Products, Inc., and its Benjamin Foster Division); Certainteed Corporation; Crown, Cork & Seal Company USA, Inc., f/k/a Crown, Cork & Seal Co., Inc.; CSR America; Dana Corporation; Durabla Manufacturing Company; Durametallic Corporation; The Flintkote Company; Foster Wheeler Corporation; Garlock Sealing Technologies LLC (in its own right and as successor in interest to Garlock, Inc.); General Electric Company; General Refractories Company; Georgia–Pacific Corporation; Grefco Incorporated; Hobart Brothers Company; Industrial Holding Corporation; Ingersoll–Rand Company; John Crane, Inc.; The Lincoln Electric Company; Metropolitan Life Insurance Company; 3M Company; Owens–Illinois, Inc.; Rapid American Corporation; Rhone–Poulenc AG Company (successor to Amchen Products, Inc., and its Benjamin Foster Division); Union Carbide Chemicals and Plastics Company, Inc.; Uniroyal, Inc.; Viacom, Inc. (successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation); and John Doe (fictitious name).

4. Other defendants that joined the motion to dismiss included The Anchor Packing Company; Garlock Sealing Technologies LLC, Successor by Merger to Garlock, Inc.; General Refractories Company; Grefco, Inc.; Durametallic Corporation; Hobart Brothers Company; and The Lincoln Electric Company. We refer to these corporations and General Elec-

litigation," and that there had been no deluge of asbestos cases over the last two decades. To the contrary, the court found that the asbestos docket had been neither unmanageable nor unwieldy. The trial justice reasoned that it was of "paramount importance" that the parties have their cases heard as promptly as possible and that asbestos-related litigation defied containment by boundaries. Although the court denied the defendants' motions to dismiss, the trial justice stated that the issue might be revisited if the asbestos docket became too burdensome or inefficient or if the management of the docket changed.

On October 12, 2005, the court entered thirty-nine orders denying defendants' motions to dismiss.[5] General Electric Company, Garlock Sealing Technologies LLC, The Lincoln Electric Company, Hobart Brothers Company, and The Anchor Packing Company filed petitions for writs of certiorari in this Court in the thirty-nine cases, each of which were opposed by the various plaintiffs. The petitions presented two questions. First, whether this Court should expressly recognize the common-law doctrine of *forum non conveniens* and set the standard for its application. Second, if the doctrine does exist, whether the Superior Court erred by exercising jurisdiction over the thirty-nine Canadian-resident plaintiffs' claims alleging injuries that occurred in Canada. This Court consolidated the defendants' petitions, and we granted certiorari on May 18, 2006.

## II

## Standard of Review

As this Court often has stated, our review "on writ of certiorari is limited 'to examining the record to determine if an error of law has been committed.'" *Crowe Countryside Realty Associates Co., LLC v. Novare Engineers, Inc.*, 891 A.2d 838, 840 (R.I.2006) (*Crowe*) (quoting *State v. Santiago*, 799 A.2d 285, 287 (R.I.2002)). "Questions of law * * * are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." *Hometown Properties, Inc. v. Rhode Island Department of Environmental Management*, 592 A.2d 841, 843 (R.I. 1991) (quoting *Narragansett Wire Co. v. Norberg*, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977)). We review questions of law *de novo*. *Crowe*, 891 A.2d at 840 (citing *Carnevale v. Dupee*, 783 A.2d 404, 408 (R.I.2001)).

We do not weigh the evidence on certiorari. *Crowe*, 891 A.2d at 840. "'If legally competent evidence exists to support th[e] determination, we will affirm it unless one or more errors of law have so infected the validity of the proceedings as to warrant reversal.'" *Cullen v. Town Council of Lincoln*, 893 A.2d 239, 244 (R.I. 2006) (quoting *Cullen v. Town Council of Lincoln*, 850 A.2d 900, 903 (R.I.2004)).

## III

### Discussion

### A. The Doctrine of *Forum Non Conveniens*

We granted certiorari to review what appears to be a question of first impression in Rhode Island and one upon which our trial courts have split. *Compare Goelet v. Goelet*, C.A. No. 03–496 (R.I.Super. Ct. June 14, 2006) (hearing justice dismissed the petition on the grounds of *fo-*

tric Company, collectively, as "defendants" in this opinion.

5. On December 7, 2005, the trial justice entered an order to clarify that the court's reasoning was based on its May 27, 2005 written

decision, and not any other version of the court's decision. Apparently, a version of the decision published online contained wording which differed from the wording in the version entered on May 27, 2005.

*rum non conveniens*) with *Perusse v. AC & S, Inc.*, No. C.A. 00–5768, slip op. at 4, 2001 WL 668548, at *2 (R.I.Super.Ct. May 31, 2001) (declining to apply *forum non conveniens* because neither the Rhode Island Supreme Court nor the Legislature had formally recognized the doctrine). We undertake to clarify this uncertainty fully cognizant of Justice Frankfurter's instruction that "the highest court of a State * * *, [a]ccording to its own notions of procedural policy, * * * may reject, as it may accept, the doctrine [of *forum non conveniens* ] for all causes of action begun in its courts." *State of Missouri ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. 1, 3, 71 S.Ct. 1, 95 L.Ed. 3 (1950).

■ The doctrine of *forum non conveniens* is "an equitable principle by which 'a court having jurisdiction may decline to exercise it on considerations of convenience, efficiency, and justice.'" *AT & T Corp. v. Sigala*, 274 Ga. 137, 549 S.E.2d 373, 375 (2001). The doctrine derives, in the absence of statutory authority, from the courts' inherent judicial powers, *id.* at 376, powers "which are incontestably necessary to the effective performance of judicial functions." Paxton Blair, *The Doctrine of Forum Non Conveniens in Anglo–American Law*, 29 Colum. L.Rev. 1, 1 (1929).

■ The doctrine of *forum non conveniens* stands for the simple proposition that "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The principle allows a court to decline to exercise jurisdiction when the plaintiff's chosen forum is significantly inconvenient and the ends of justice would be better served if the action were brought and tried in another forum. *See, e.g., Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 947 (1st Cir.1991); *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 740 P.2d 1089, 1094 (1987); *Qualley v. Chrysler Credit Corp.*, 191 Neb. 787, 217 N.W.2d 914, 915 (1974). Before this Court, defendants acknowledge, and we agree, that the trial justice correctly found that the thirty-nine underlying cases meet the jurisdictional requirements of G.L. 1956 § 8–2–14 [6] and the venue provisions of G.L. 1956 § 9–4–5.[7] Thus the only issue

**6.** General Laws 1956 § 8–2–14 entitled "**Jurisdiction of actions at law**" provides in part:

"(a) The superior court shall have original jurisdiction of all actions at law where title to real estate or some right or interest therein is in issue, except actions for possession of tenements let or held at will or by sufferance; and shall have exclusive original jurisdiction of all other actions at law in which the amount in controversy shall exceed the sum of ten thousand dollars ($10,-000); and shall also have concurrent original jurisdiction with the district court in all other actions at law in which the amount in controversy exceeds the sum of five thousand dollars ($5,000) and does not exceed ten thousand dollars ($10,000); provided, that the plaintiff shall not recover costs unless he or she shall recover in such action not less than five thousand dollars ($5,000), or unless the action is one in

which the title to real estate or some right or interest therein is in question, or unless in the discretion of the court, on motion, costs are awarded. If an action is brought in the superior court which is within the jurisdiction conferred by this section, the superior court shall have jurisdiction of all other actions arising out of the same transaction or occurrence, provided the other actions are joined with the action within the jurisdiction conferred by this section or are subsequently made a part thereof under applicable procedural rules."

**7.** General Laws 1956 § 9–4–5 reads as follows:

"**Venue of actions between nonresident parties.**—If no one of the plaintiffs or defendants dwell within the state, and a corporation established out of the state be a party,

before this Court is the vitality and scope of the doctrine of *forum non conveniens* in Rhode Island.

The plaintiffs contend that *forum non conveniens* has not existed in Rhode Island for more than two centuries, and that it is not part of the common law of this state. They allege that *forum non conveniens* is a flawed doctrine that has led to confusion and inconsistency in federal and state courts. They further argue that the General Assembly is the appropriate body to adopt the doctrine, and they point out that it has not enacted the doctrine in any form, except for child-custody cases. *See* G.L. 1956 § 15–14.1–19. The plaintiffs allege that if *forum non conveniens* is an inherent part of Rhode Island's common law, there would have been no need to specifically enumerate the doctrine in the UCCJA.

The defendants argue that *forum non conveniens* is a doctrine developed at common law that is recognized by the federal courts and the other forty-nine states. The defendants allege that the common law encompasses the inherent judicial power to "protect defendants and the public from injurious and unnecessary forum choices by plaintiffs." They dispute plaintiffs' contention that the *forum non conveniens* doctrine lacks uniformity throughout the states, contending that there are only minor variations among the states and at the federal level.

■ After carefully considering the written and oral submissions of the parties, as well as the submissions of *amici*

*curiae*,[8] it is our conclusion that the doctrine of *forum non conveniens*, although heretofore formally acknowledged in Rhode Island only in the context of child-custody cases, is indeed part of our jurisprudential landscape. We take this opportunity, therefore, to recognize the doctrine formally and to delineate its standards.

■ The doctrine of *forum non conveniens* "is founded in considerations of fundamental fairness and sensible and effective judicial administration," *Adkins v. Chicago, Rock Island and Pacific Railroad Co.*, 54 Ill.2d 511, 301 N.E.2d 729, 730 (1973), and it is widely recognized to be of common law origin. *Gulf Oil Corp.*, 330 U.S. at 507, 67 S.Ct. 839; *Price v. Atchison, T. & S.F. Ry. Co.*, 42 Cal.2d 577, 268 P.2d 457, 461 (1954) (citing *Gulf Oil Corp.*, 330 U.S. at 507–09, 67 S.Ct. 839); *McDonnell–Douglas Corp. v. Lohn*, 192 Colo. 200, 557 P.2d 373, 374 (1976); *Picketts v. International Playtex, Inc.*, 215 Conn. 490, 576 A.2d 518, 524 (1990) (citing *Koster v. (American) Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)); *Yost v. Johnson*, 591 A.2d 178, 182 (Del.1991); *Kinney System, Inc. v. Continental Insurance Co.*, 674 So.2d 86, 87 (Fla.1996); *Torres v. Walsh*, 98 Ill.2d 338, 74 Ill.Dec. 880, 456 N.E.2d 601, 605 (1983); *Gonzales v. Atchison Topeka and Santa Fe Railway Co.*, 189 Kan. 689, 371 P.2d 193, 196, 198 (1962) ("The doctrine of *forum non conveniens* is of ancient common law origin and has been recognized and applied in the federal courts and in the courts of most of the

personal or transitory actions or suits by or against it may, if brought in the superior court, be brought in the court for any county, or if in the district court, in any division."

**8.** We take this opportunity to thank *amici curiae*, Products Liability Advisory Council, Inc., International Association of Defense

Counsel, Chamber of Commerce of the United States of America, American Tort Reform Association, Pharmaceutical Research and Manufacturers of America, Coalition for Litigation Justice, National Association of Manufacturers, and American Insurance Association for their helpful briefs.

states."); *Beaven v. McAnulty,* 980 S.W.2d 284, 287 (Ky.1998); *Radeljak v. Daimler-Chrysler Corp.,* 475 Mich. 598, 719 N.W.2d 40, 42 (2006); *Johnson v. Chicago, Burlington & Quincy Railroad Co.,* 243 Minn. 58, 66 N.W.2d 763, 767 (1954) (citing *Gulf Oil Corp.,* 330 U.S. at 507, 67 S.Ct. 839); *Clark v. Luvel Dairy Products, Inc.,* 731 So.2d 1098, 1099–1101 (Miss.1998); *Qualley,* 217 N.W.2d at 915; *Civic Southern Factors Corp. v. Bonat,* 65 N.J. 329, 322 A.2d 436, 438 (1974); *Islamic Republic of Iran v. Pahlavi,* 62 N.Y.2d 474, 478 N.Y.S.2d 597, 467 N.E.2d 245, 247 (1984); *Chambers v. Merrell–Dow Pharmaceuticals, Inc.,* 35 Ohio St.3d 123, 519 N.E.2d 370, 372 (1988); *Rothluebbers v. Obee,* 668 N.W.2d 313, 317 (S.D.2003); *Dow Chemical Co. v. Castro Alfaro,* 786 S.W.2d 674, 677 (Tex.1990); *Norfolk & Western Railway Co. v. Tsapis,* 184 W.Va. 231, 400 S.E.2d 239, 243–44 (1990).

■ ■ Inherent judicial power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash Railroad Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). The inherent power of courts includes the authority to dismiss on the basis of *forum non conveniens. Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (describing *forum non conveniens* as an inherent power); *In re Prevot,* 59 F.3d 556, 565–66 (6th Cir.1995) (dismissal on *forum non conveniens* is an inherent power); *Running v. Southwest Freight Lines, Inc.,* 227 Ark. 839, 303 S.W.2d 578, 580 (1957) (describing the *forum non conveniens* inquiry as an inherent power); *AT & T Corp.,* 549 S.E.2d at 376; *Johnson v. G.D. Searle & Co.,* 314 Md. 521, 552 A.2d 29, 31 (1989); *Universal Adjustment Corp. v. Midland Bank Ltd. of London, England,* 281 Mass. 303, 184 N.E. 152, 159 (1933); *Elliott v. Johnston,* 365 Mo. 881, 292 S.W.2d 589, 593 (1956); *St. Louis–San Francisco Railway Co. v. Superior Court,* 276 P.2d 773, 778 (Okla.1954); *Zurick v. Inman,* 221 Tenn. 393, 426 S.W.2d 767, 771 (1968); *Mooney v. Denver & R.G.W.R. Co.,* 118 Utah 307, 221 P.2d 628, 631 (1950); *Werner v. Werner,* 84 Wash.2d 360, 526 P.2d 370, 378 (1974).[9]

9. Our survey of sister jurisdictions reveals that forty-six states have recognized the doctrine of *forum non conveniens* for cases not involving child custody disputes.

At least twenty-two states have enacted *forum non conveniens* statutes or promulgated rules of civil procedure: Ala.Code § 6–5–430 (2005); Ark.Code Ann. § 16–4–101 D. (1999); Cal.Civ.Proc.Code § 410.30 (2004); Colo.Rev. Stat. Ann. § 13–20–1004 (West 2005); Ga. Code Ann. § 9–10–31.1 (2007); La.Code Civ. Proc. Ann. Art. 123 (2007); Md.Code. Ann., Cts. & Jud. Proc. § 6–104(a) (2006); Mass. Gen. Laws ch. 223A, § 5 (West 2000); Miss. Code Ann. § 11–11–3(4) (1972); Neb.Rev. Stat. § 25–538 (1995); N.Y. C.P.L.R. 327(a) (McKinney 2001); N.C. Gen.Stat. § 1–75.12 (2007); Okla. Stat. tit. 12, § 1701.05 (1993); 42 Pa. Cons.Stat. § 5322(e) (West 1981); Tex. Civ. Prac. & Rem.Code § 71.051 (Vernon 1997); Va.Code § 8.01–265 (2000); W. Va. Code § 56–1–1a (Lexis Nexis 2007); Wis. Stat. Ann. § 801.63 (West 1994); Fla. R. Civ. P. 1.061; Ill. S.Ct. R. 187; Ind. R. Trial P. 4.4(C)-(E); N.D. R. Civ. P. 4(b)(5).

In Arkansas, California, Colorado, Florida, Georgia, Illinois, Massachusetts, Mississippi, New York, Oklahoma, Pennsylvania, Texas, and West Virginia the doctrine was recognized by the state's highest court before the enactment or promulgation of the respective statute or rule of civil procedure. Including these states, thirty-eight states have recognized the doctrine through case law. *See Crowson v. Sealaska Corp.,* 705 P.2d 905, 907–08 (Alaska 1985); *First National Bank & Trust Co. v. Pomona Machinery Co.,* 107 Ariz. 286, 486 P.2d 184, 188 (1971); *Running v. Southwest Freight Lines, Inc.,* 227 Ark. 839, 303 S.W.2d 578, 580–81 (1957); *Price v. Atchison, T. & S.F. Ry. Co.,* 42 Cal.2d 577, 268 P.2d 457, 458–63 (1954); *McDonnell–Douglas Corp. v. Lohn,* 192 Colo. 200, 557 P.2d 373, 374 (1976); *Union Carbide Corp. v. Aetna Ca-*

■ The plaintiffs' contention that the General Assembly's enactment of the UCCJA's (now UCCJEA) *forum non conveniens* provision, § 15–14.1–19, in 1978 precludes the application of the doctrine generally is of no moment.[10] The provision applies only to child custody cases and allows a court to "decline to exercise

*sualty and Surety Co.*, 212 Conn. 311, 562 A.2d 15, 19–21 (1989); *General Foods Corp. v. Cryo–Maid, Inc.*, 198 A.2d 681, 683–84 (Del. 1964); *Kinney System, Inc. v. Continental Insurance Co.*, 674 So.2d 86, 87–94 (Fla.1996); *AT & T Corp. v. Sigala*, 274 Ga. 137, 549 S.E.2d 373, 375–77 (2001); *Lesser v. Boughey*, 88 Hawai'i 260, 965 P.2d 802, 804–06 (1998); *Whitney v. Madden*, 400 Ill. 185, 79 N.E.2d 593, 595–96 (1948); *Rath Packing Co. v. Intercontinental Meat Traders, Inc.*, 181 N.W.2d 184, 189–90 (Iowa 1970); *Gonzales v. Atchison Topeka and Santa Fe Railway Co.*, 189 Kan. 689, 371 P.2d 193, 196–200 (1962); *Beaven v. McAnulty*, 980 S.W.2d 284, 285–88 (Ky.1998); *MacLeod v. MacLeod*, 383 A.2d 39, 41–43 (Me.1978); *Universal Adjustment Corp. v. Midland Bank, Ltd. of London, England*, 281 Mass. 303, 184 N.E. 152, 157–62 (1933); *Cray v. General Motors Corp.*, 389 Mich. 382, 207 N.W.2d 393, 395–99 (1973); *Johnson v. Chicago, Burlington and Quincy Railroad Co.*, 243 Minn. 58, 66 N.W.2d 763, 767–76 (1954); *Strickland v. Humble Oil & Refining Co.*, 194 Miss. 194, 11 So.2d 820, 822–23 (1943); *State ex rel. Chicago, Rock Island & Pacific Railroad Co. v. Riederer*, 454 S.W.2d 36, 37–40 (Mo. 1970); *Qualley v. Chrysler Credit Corp.*, 191 Neb. 787, 217 N.W.2d 914, 915–16 (1974); *Eaton v. Second Judicial District Court*, 96 Nev. 773, 616 P.2d 400, 401–02 (1980); *Thistle v. Halstead*, 95 N.H. 87, 58 A.2d 503, 505–07 (1948); *Gore v. United States Steel Corp.*, 15 N.J. 301, 104 A.2d 670, 672–76 (1954); *Buckner v. Buckner*, 95 N.M. 337, 622 P.2d 242, 243–44 (1981); *Silver v. Great American Insurance Co.*, 29 N.Y.2d 356, 328 N.Y.S.2d 398, 278 N.E.2d 619, 621–23 (1972); *Chambers v. Merrell–Dow Pharmaceuticals, Inc.*, 35 Ohio St.3d 123, 519 N.E.2d 370, 372–78 (1988); *St. Louis–San Francisco Railway Co. v. Superior Court*, 276 P.2d 773, 775–79 (Okla. 1954); *Plum v. Tampax, Inc.*, 399 Pa. 553, 160 A.2d 549, 552–54 (1960); *Nienow v. Nienow*, 268 S.C. 161, 232 S.E.2d 504, 507–08 (1977); *Rothluebbers v. Obee*, 668 N.W.2d 313, 316–21 (S.D.2003); *Zurick v. Inman*, 221 Tenn. 393, 426 S.W.2d 767, 768–72 (1968); *Dow Chemical Co. v. Castro Alfaro*, 786 S.W.2d 674, 676–79 (Tex.1990); *Mooney v. Denver & R.G.W.R. Co.*, 118 Utah 307, 221 P.2d 628, 638–49 (1950); *Burrington v. Ash-*

*land Oil Co.*, 134 Vt. 211, 356 A.2d 506, 509–11 (Vt.1976); *Werner v. Werner*, 84 Wash.2d 360, 526 P.2d 370, 377–78 (1974); *Norfolk and Western Railway Co. v. Tsapis*, 184 W.Va. 231, 400 S.E.2d 239, 242–45 (1990), *abrogated by State ex rel. Smith v. Maynard*, 193 W.Va. 1, 454 S.E.2d 46, 50–54 (1994) (holding that intrastate *forum non conveniens* is regulated by statute); *West Texas Utilities Co. v. Exxon Coal USA, Inc.*, 807 P.2d 932, 935 (Wyo.1991).

Three states have yet to definitively recognize the doctrine of *forum non conveniens*. The Montana Supreme Court has not seen fit to adopt the doctrine. *See Rule v. Burlington Northern and Santa Fe Railway Co.*, 325 Mont. 329, 106 P.3d 533, 536 (2005) ("this Court does not recognize the doctrine of *forum non conveniens* in FELA actions"); *State ex rel. Burlington Northern Railroad Co. v. District Court*, 270 Mont. 146, 891 P.2d 493, 498 (1995) (explaining that the court has "neither accepted nor rejected the application of *forum non conveniens* in non-FELA cases and we have neither denied nor recognized the existence of that doctrine in cases where there is no strong policy favoring plaintiff's forum selection"). The Supreme Court of Idaho has mentioned the doctrine only in passing. *See Marco Distributing, Inc. v. Biehl*, 97 Idaho 853, 555 P.2d 393, 396–97 (1976) (deciding the case on personal jurisdiction grounds and not addressing the lower court's *forum non conveniens* inquiry). Similarly, the Supreme Court of Oregon has not ruled on the matter definitively, but Oregon appellate courts have employed the doctrine. *See State ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 657 P.2d 211, 216 n. 5 (1982) (mentioning *forum non conveniens* in dicta); *Maricich v. Lacoss*, 204 Or.App. 61, 129 P.3d 193, 195 n. 1 (2006) ("We assume, for purposes of this case, that the doctrine can be applied in Oregon courts.").

10. The Uniform Child Custody Jurisdiction Act, enacted in 1978, was replaced by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) in 2003. G.L. 1956 chapter 14.1 of title 15; *see also* P.L. 2003 ch. 307; P.L. 2003 ch. 322.

its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Section 15–14.1–19. The plaintiffs argue that § 15–14.1–19 is the only time the doctrine of *forum non conveniens* appears in a Rhode Island statute and that, if *forum non conveniens* were already part of the common law, there would have been no need for the Legislature to confer special authority in child-custody cases. We disagree.

■ The UCCJEA addresses the doctrine of *forum non conveniens* only in the limited context of child custody litigation. "Although specific statutes codifying the doctrine will prevail over the common law, the absence of a statute generally permitting dismissal based on forum non conveniens does not prohibit us from adopting the doctrine * * *." *AT & T Corp.*, 549 S.E.2d at 377–78 (holding that the UC-CJA does not preclude adoption of *forum non conveniens* ). Further, in the specific instance of child-custody litigation, we applied the principles of *forum non conveniens* even before the UCCJA (now UC-CJEA) went into effect in Rhode Island. *See Paolino v. Paolino,* 420 A.2d 830, 835–36 (R.I.1980). At most, the UCCJEA mends the fabric of the common law, rather than weakening it. *Cf. O'Sullivan v. Rhode Island Hospital,* 874 A.2d 179, 184 n. 9 (R.I.2005) (discussing how wrongful death acts do not take away common law rights, rather, "they were designed to

mend the fabric of the common law, not to weaken it"). Indeed, there is no indication that the common-law doctrine of *forum non conveniens* conflicts with a state statute or that this Court has ever refused to adopt the doctrine. *See Rothluebbers,* 668 N.W.2d at 317.

## B. The *Forum Non Conveniens* Legal Standard

■ Having recognized that *forum non conveniens* has vitality in Rhode Island, we take the opportunity to set forth the standard for applying the doctrine. When our own procedural rules and our case law are silent on a particular issue, "[i]t makes eminent good sense to consider the experience and the reasoning of the judges in other jurisdictions both as federal judges and judges of other state courts whose rules are patterned after the federal rules." *Ciunci, Inc. v. Logan,* 652 A.2d 961, 962 (R.I.1995); *see also Landmark Medical Center v. Gauthier,* 635 A.2d 1145, 1150 (R.I.1994) ("we look for guidance to the various approaches of our sister states that have considered this [common law] question"). The vast majority of states adhere to a test that is similar to the federal doctrine.[11] We therefore will look to the federal courts as well as to our sister states, although, "[b]y doing so we do not subject ourselves to the[ir] authority * * *." *Ciunci, Inc.,* 652 A.2d at 962.

■ Under the doctrine of *forum non conveniens,* "when an alternative forum has jurisdiction to hear [a] case, and when

**11.** Legal commentators are in general agreement that most states follow the federal *forum non conveniens* test. *See* Martin Davies, *Time to Change the Federal Forum Non Conveniens Analysis,* 77 Tul. L.Rev. 309, 315 (2002) (thirty states have "effectively identical" analyses to the federal test, and thirteen other states employ a "very similar" test); David W. Robinson & Paula K. Speck, *Access to State Courts in Transnational Personal Injury Cases:* *Forum Non Conveniens and Antisuit Injunctions,* 68 Tex. L.Rev. 937, 950 (1990) (as of 1990, thirty-two states recognized "something very closely resembling" the federal doctrine, and four other states indicated they would follow the federal doctrine); *see also AT & T Corp.,* 549 S.E.2d at 376 ("the vast majority of states now follow a standard similar to the federal rule").

trial in the chosen forum would 'establish * * * oppressiveness and vexation to a defendant * * * out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case" on *forum non conveniens* grounds, "even if jurisdiction and proper venue are established." *American Dredging Co. v. Miller*, 510 U.S. 443, 447–48, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

Before embarking on a *forum non conveniens* inquiry, a court must determine the existence of proper jurisdiction and venue. *See Gulf Oil Corp.*, 330 U.S. at 504, 67 S.Ct. 839 ("the doctrine of *forum non conveniens* can never apply if there is an absence of jurisdiction or mistake of venue"). A court never can apply *forum non conveniens* once it determines that jurisdiction is lacking. *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, —— U.S. ——, ——, 127 S.Ct. 1184, 1193, 167 L.Ed.2d 15 (2007). Nevertheless, a court may "dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 1192. Such a scenario occurs, for example, when discovery concerning personal jurisdiction would burden a defendant with expense and delay for "scant purpose" because a court would inevitably dismiss on the basis of *forum non conveniens. Id.* at 1194. However, in most cases, when a court can "readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground." *Id.*

The *forum non conveniens* inquiry consists of a two-prong analysis. First, the court must decide whether an alternative forum exists that is both available and adequate to resolve the disputed legal issues. *Piper Aircraft Co.*, 454 U.S. at 255 n. 22, 102 S.Ct. 252. Second, the court must determine the inconvenience of continuing in the plaintiff's chosen forum by weighing private- and public-interest factors. *Piper Aircraft Co.*, 454 U.S. at 255, 102 S.Ct. 252; *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. 839. "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem International Co. Ltd.*, 127 S.Ct. at 1191. It is well settled that the defendant carries the burden of persuasion at each stage of the *forum non conveniens* inquiry. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir.1988).

The first prong of the *forum non conveniens* analysis requires a determination of the existence of an available and adequate alternative forum. If the alternative forum is not available, a court cannot dismiss on *forum non conveniens* grounds. The availability of the alternative forum rests upon whether "the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft Co.*, 454 U.S. at 255 n. 22, 102 S.Ct. 252 (quoting *Gulf Oil Corp.*, 330 U.S. at 507, 67 S.Ct. 839). To guarantee availability, a court can condition a *forum non conveniens* dismissal on the defendant's consent to submit to jurisdiction in the alternative forum. *See Kinney System, Inc.*, 674 So.2d at 92. For example, in *Johnson*, 552 A.2d at 34, 37, the court conditioned a *forum non conveniens* dismissal on a waiver of the statute of limitations. *See also Shewbrooks v. A.C. and S., Inc.*, 529 So.2d 557, 562–63 (Miss. 1988) (collecting cases).

■ Even where the alternative forum is available, a court cannot dismiss on *forum non conveniens* grounds if the alternative forum is inadequate. In performing the adequacy calculus, "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight," *Piper Aircraft Co.*, 454 U.S. at 247, 102 S.Ct. 252, because "[i]f substantial weight were given to the possibility of an unfavorable change in law * * * dismissal might be barred even where trial in the chosen forum was plainly inconvenient." *Id.* at 249, 102 S.Ct. 252. However, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight * * *." *Id.* at 254, 102 S.Ct. 252. As Wright, Miller & Cooper point out:

> "[T]he bar for establishing that the alternative forum is adequate historically has been quite low. Thus, according to a number of decisions, the alternative forum is adequate as long as the plaintiff will not be deprived of all remedies or subjected to unfair treatment. A mere decrease in the amount potentially recoverable or the loss of the availability of contingent fee arrangements, the absence of the right to a jury trial, or the loss of various other procedural advantages such as the alternative forum's restrictions on the scope or nature of discovery and the lack of a class action or other aggregation procedures normally will not prevent dismissal. Likewise, general accusations of corruption, delay, or other problems with the alternative forum's judicial system normally will not suffice * * *." 14D Charles Alan Wright, Arthur R. Miller & Edward H.

Cooper, *Federal Practice & Procedure* § 3828.3 at 677–82 (3d ed. 2007).

■ The second prong of the *forum non conveniens* inquiry focuses on the inconvenience of continuing in the chosen forum by weighing private- and public-interest factors. It is not possible to catalogue all the circumstances that may or may not lead to a *forum non conveniens* dismissal. *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839. Because the doctrine requires flexibility, central emphasis should not be placed on any one private- or public-interest factor. *Piper Aircraft Co.*, 454 U.S. at 249–50, 102 S.Ct. 252. Nevertheless, the most relevant private- and public-interest factors have been clearly and repeatedly identified by the United States Supreme Court. *See Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839; *see also American Dredging Co.*, 510 U.S. at 448–49, 114 S.Ct. 981; *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988); *Piper Aircraft Co.*, 454 U.S. at 241 n. 6, 102 S.Ct. 252.

■ The private interests of the litigants include the following factors:

> "Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839.[12]

■ Other factors that may be relevant to the private-interest assessment include the enforceability of a judgment in the alternative forum, and the advantages

---

12. The weight to be given to a plaintiff's willingness to bring witnesses to the chosen forum is in the sound discretion of the trial justice. *Myers v. Boeing Co.*, 115 Wash.2d 123, 794 P.2d 1272, 1278 (1990).

and obstacles to a fair trial. *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839. Also, a "plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." *Id.* The private interest of a plaintiff should be afforded more weight when the forum choice appears to be based on legally valid reasons such as convenience and expense. Conversely, the private interest of a defendant should be afforded more weight when a plaintiff's choice of forum seems motivated by forum-shopping objectives such as tactical attempts to harness more favorable laws and damages remedies, taking advantage of jurisdictions with generous jury verdicts, or causing inconvenience and expense to a defendant. *Cf. Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71–72 (2d Cir.2001) (discussing deference afforded to plaintiff's forum choice). The convenience of access by counsel to a plaintiff's chosen forum ordinarily is not given appreciable weight in the private-interest calculus. *Johnson*, 552 A.2d at 33 (citing cases in other states).

The United States Supreme Court also has identified several public-interest factors:

> "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law

that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. 839.

Some courts have proceeded to analyze the public-interest factors only when the balance of the private-interest factors is close or in equipoise. *See, e.g., Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602, 606 (D.C.Cir. 1983) (quoting *Pain v. United Technologies Corp.*, 637 F.2d 775, 784–85 (D.C.Cir. 1980)); *Kinney System, Inc.*, 674 So.2d at 91. Many other courts consider the private- and public-interest factors collectively without making a preliminary inquiry into the private factors. *See generally* 14D Charles Alan Wright et al., § 3828.4. Wright, Miller & Cooper advocate the latter approach and argue that "there is no sound basis" for making a preliminary inquiry into the private factors. *Id.* § 3828.4 at 692. They point to language in *Piper Aircraft Co.*, 454 U.S. at 257, 102 S.Ct. 252, which states that a trial court must consider "all relevant public and private interest factors." *See* 14D Charles Alan Wright et al., § 3828.4 at 692. We agree with this latter approach and conclude that a trial court should consider both the private- and public-interest factors in ruling on a motion to dismiss on the grounds of *forum non conveniens*. *See Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. 839 (considering both private- and public-interest factors to make the *forum non conveniens* determination); *Watson v. Merrell Dow Pharmaceuticals, Inc.*, 769 F.2d 354, 356 (6th Cir. 1985); *Cowan v. Ford Motor Co.*, 713 F.2d 100, 102–03 (5th Cir.1983).

### C. The Standard of Review

The application of the doctrine of *forum non conveniens* leaves much to

the discretion of the trial court. *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839. A *forum non conveniens* dismissal is not a decision on the merits, rather "it is a determination that the merits should be adjudicated elsewhere." *Sinochem International Co. Ltd.*, 127 S.Ct. at 1192. A trial court's decision to grant or deny a motion to dismiss on *forum non conveniens* grounds is reviewed under an abuse of discretion standard. *See, e.g., Piper Aircraft Co.*, 454 U.S. at 257, 102 S.Ct. 252; *Durkin v. Intevac, Inc.*, 258 Conn. 454, 782 A.2d 103, 111 (2001) ("A ruling on a motion to dismiss for forum non conveniens is reviewed under an abuse of discretion standard."); *W.R. Grace & Co. v. Hartford Accident and Indemnity Co.*, 407 Mass. 572, 555 N.E.2d 214, 217–18 (1990). "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co.*, 454 U.S. at 257, 102 S.Ct. 252.

### D. *Forum Non Conveniens* Applied to These Cases

■ This Court has previously said that we will not fault a trial justice for lack of clairvoyance. *State v. Bido*, 941 A.2d 822, 829 (R.I.2008). Nor do we expect a trial justice to apply standards that have yet to be pronounced. Nevertheless, it is our conclusion that the doctrine of *forum non conveniens* does exist in Rhode Island as an inherent judicial power, albeit heretofore we have never had occasion to recognize it formally. We further conclude that the circumstances of these thirty-nine cases present compelling reasons for the application of the doctrine. Accordingly, we vacate the orders denying defendants' motions to dismiss.

■ The Superior Court in these cases found that jurisdiction and venue were proper and that Rhode Island was not mired in asbestos litigation, a condition we attribute in no small measure to the efficiency of the trial justice currently presiding over the asbestos calendar. The court also noted that although "the asbestos docket has been active, it has been neither unmanageable nor unwieldy." Beyond these limited observations, however, the trial justice made no findings relevant to the *forum non conveniens* inquiry that we have pronounced herein. We have considered remanding these cases for further development of the facts and review in accordance with the standards set forth in this opinion. We are persuaded, however, that the significant factors pertinent to the relevant inquiry weigh so heavily in favor of dismissal that such a remand is unnecessary. We proceed, therefore, to decide the issue in the exercise of our supervisory powers. *See Tanner v. Town Council of East Greenwich*, 880 A.2d 784, 801 (R.I. 2005).

[44] The defendants concede that the Superior Court has proper jurisdiction and venue, so we proceed directly to the *forum non conveniens* inquiry. The defendants must establish that plaintiffs have an adequate alternative forum available to them. The plaintiffs stated in the Superior Court that "we could file these cases in Canada, certainly we could file a complaint; but * * * these plaintiff's [*sic*] cannot get the kind of discovery in Canada that they can get here." The plaintiffs therefore acknowledge that Canada stands ready as an available alternative forum. Further, *Piper Aircraft Co.*, 454 U.S. at 254, 102 S.Ct. 252, teaches that differences in discovery standards are not enough to establish the inadequacy of the forum. The remedy in the alternative forum must be clearly inadequate, which is certainly not the case here. It cannot be disputed that Canada has a legal system capable of affording the

possibility of remedies to the plaintiffs in the underlying cases. *See generally* David S. Morritt & Sonia L. Bjorkquist, *Product Liability in Canada: Principles and Practice North of the Border*, 27 Wm. Mitchell L.Rev. 177 (2000). At oral argument, there was some disagreement about the running of the statute of limitations in another forum. To ensure the availability of another adequate forum, we will condition the *forum non conveniens* dismissals upon defendants' agreement to waive any statute of limitations defense in such alternative forum. *See Johnson*, 552 A.2d at 37; *Shewbrooks*, 529 So.2d at 562–63.

■■■ The second prong of the inquiry requires a weighing of the private- and public-interest factors. Relevant private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for unwilling witnesses and the cost of obtaining attendance for willing witnesses; (3) the possibility of a view of premises when relevant; and (4) all other practical problems that might make trial of a case easy, expeditious, and inexpensive. *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839. Other relevant factors may include the enforceability of the judgment in the alternative forum and a plaintiff's vexation, harassment, or oppression of a defendant by choosing an inconvenient forum. *Id.*

In the Superior Court, plaintiffs said that "Rhode Island provides the best opportunity for these plaintiffs to have their cases heard," and that plaintiffs "have a better shot in this courtroom [in Rhode Island] than in anyplace in Canada * * *." The plaintiffs also acknowledged that in Canada they would receive damage awards only in an amount over and above any money awarded to Canadian workers' compensation boards, who are unnamed in the underlying cases but remain "true parties in interest" to the litigation. The plaintiffs described the situation as "almost a reverse lien," in which "[o]nce the plaintiffs satisfy the lien that the workers' comp boards have on the plaintiff's case, the plaintiff gets anything over and above that; so the plaintiffs here * * * are true parties in interest."

We note, however, that neither plaintiffs nor defendants in the underlying cases are residents of Rhode Island or domiciled here. Much of the evidence necessarily is in Canada or other United States jurisdictions. The trial justice observed that the injuries and treatment occurred in Canada, where plaintiffs are residents. The complaint in the appellate record [13] contains a long recitation of tortious acts, none of which are alleged to have occurred in Rhode Island. No witnesses, workplace sites, or any other relevant evidence appear to be situated in the Ocean State.[14] Moreover, most if not all of the relevant information on the issue of damages is in Canada or jurisdictions other than Rhode Island. Access to proof is clearly less convenient here than in any jurisdiction where any of the defendants or plaintiffs are situated or where the injury or allegedly tortious conduct occurred. Moreover, if the view of any premises were relevant

---

**13.** On July 6, 2006, this Court granted a joint motion of the parties to designate portions of the trial record for transmittal under Article I, Rule 10(c) of the Supreme Court Rules of Appellate Procedure. Accordingly, by agreement of the parties, the appellate record includes only one complaint.

**14.** Tellingly, plaintiffs' brief does not identify a single example of discoverable evidence that exists in Rhode Island. The plaintiffs argued before the trial justice that *forum non conveniens* is not appropriate for asbestos litigation because expert witnesses are deposed across the United States. The plaintiffs did not identify any expert witnesses, however, within the borders of Rhode Island.

and desirable, it would not occur in Rhode Island.

▮ Turning to the availability of witnesses, "only Canadian courts, not courts within the United States, have the legal power to compel the testimony of * * * Canadian potential witnesses who are not under the control of any party." *Howe,* 946 F.2d at 951. Because no one other than the attorneys involved actually is located in Rhode Island, literally all the witnesses and parties would have to travel to Rhode Island for the trial or other proceedings. We are of the opinion, therefore, that the relevant private-interest factors militate in favor of dismissal and counterbalance the deference to which plaintiffs' choice of forum is entitled. *Cf. Stewart v. Dow Chemical Co.,* 865 F.2d 103, 107 (6th Cir.1989) (affirming *forum non conveniens* dismissal when evidence pertaining to injuries, treating physicians, the site of the injury, and witnesses were all in Canada); *3M Co. v. Johnson,* 926 So.2d 860, 865 (Miss.2006) (dismissing an asbestos action on *forum non conveniens* grounds for parties that had no connection with the plaintiff's chosen forum).

▮ We now turn to the public-interest factors. They include: (1) administrative difficulties associated with court congestion; (2) the burden of jury duty when the community has no relation to the litigation; (3) the interest in having cases involving many people heard nearby the people affected and in having localized controversies decided at home; and (4) avoiding problems in conflict of laws and the appli-

cation of foreign law. *Gulf Oil Corp.,* 330 U.S. at 508–09, 67 S.Ct. 839.

Without question, the public-interest factors weigh heavily toward dismissal. Although the Superior Court found that asbestos litigation has not congested Rhode Island courts, the other public-interest factors far outweigh this consideration. In the case at bar, a jury may have to sit through a complicated trial that literally has no connection to Rhode Island besides a generalized interest that is constant throughout the entire United States and beyond, *viz.,* the interest in preventing asbestos-related diseases. Further, the likelihood that Canadian or other foreign law would apply in these cases would place additional, although not insurmountable, burdens upon our courts. Also, significant administrative difficulties may arise with respect to compelling the attendance of witnesses and the production of documents. *3M Co.,* 926 So.2d at 865–66.

We recognize that modern technology truly has brought to fruition the "global village" envisioned by Marshall McLuhan in 1962.[15] The advent of electronic data discovery, computer technology, electronic communication, video depositions, and the relative ease of travel have greatly relieved the burdens of long-distance litigation. Nevertheless, we must also be cognizant of the strains such litigation places on Rhode Island's judicial resources. Courts across the country have experienced a burgeoning of products-liability and negligence litigation, much of which, as the trial justice noted, transcends geographical boundaries. Our courts in Rhode Island must stand open to provide remedies to

---

15. Ironically, Marshall McLuhan (1911–1980) was a Canadian educator, philosopher, and communications theorist. Although he popularized the term "the global village" in his book *The Gutenberg Galaxy: The Making of Typographic Man,* 31 (1962), the concept is attributed to Wyndham Lewis, who wrote in his 1948 book "[T]he earth has become one big village, with telephones laid on from one end to the other, and air transport, both speedy and safe * * *." Wyndham Lewis, *America and Cosmic Man,* ch. II, 14, 16 (1948).

those who have been injured and to treat all litigants fairly. Our courts, however, need not resolve disputes of all persons who choose to file suit in Rhode Island. *See Pain,* 637 F.2d at 791 ("the central question which a court must answer when weighing the *public* interests in the outcome and administration of a case such as this is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it"); *Kinney System, Inc.,* 674 So.2d at 88 ("Nothing in our law establishes a policy that Florida must be a courthouse for the world, nor that the taxpayers of the state must pay to resolve disputes utterly unconnected with this state's interests."). In the thirty-nine cases under review, we are unable to discern any nexus with the State of Rhode Island.

We are satisfied, therefore, that the private- and public-interest factors clearly favor the application of the doctrine of *forum non conveniens.*

## IV

### Conclusion

For the reasons stated in this opinion, we vacate the orders of the Superior Court. To ensure the availability of an adequate alternative forum, we direct the Superior Court to enter in each case an order dismissing the plaintiff's complaint upon the condition that the defendants stipulate to waive any statute of limitations defense in the alternative forum. The record shall be remanded to the Superior Court for further proceedings consistent with this opinion.