Chief Justice SUTTELL,
concurring in part and dissenting in part.
Although I concur with the majority’s conclusion that the judgment of the Family Court should be vacated, I depart somewhat from its reasoning. Perhaps my quarrel with the majority opinion is more form than substance. Nevertheless, I believe that the hearing justice appropriately considered the statutory factors set forth in G.L.1956 § 15-14.1-19(b) and that she did not abuse her discretion in finding that Ireland was the more appropriate forum. I agree with the majority, however, that the hearing justice did not perform the second step of the two-part analysis required by the Uniform Child Custody Jurisdiction and Enforcement Act’s (UC-CJEA). forum non conveniens inquiry as set forth, in § 15-14.1-19 — she did not make an independent finding that Rhode Island is an inconvenient forum.
Section 15-14.1-19(a) provides that the Family Court “may decline to exercise its jurisdiction at any time if it determines that [1] it is an inconvenient forum ■ under the circumstances and [2] that a court of another state [or foreign country in this-'instance] is a more appropriate forum,” Under § 15-14.1-19(b), 'the court must first determine “whether it is appropriate for a court of another state [or foreign country] to exercise jurisdiction.” The statute further enumerates eight non-exclusive factors that the court “shall consider.” As the majority opinion acknowledges, the hearing justice “properly referenced” all eight factors in reaching her conclusion that Ireland was the more appropriate jurisdiction. Although I might have weighed the various factors differently than the hearing justice did, her finding in this regard was, in my judgment, well within the ambit of her discretion.
• To be sure, the- hearing justice did not articulate the specific significance she ascribed to each factor. Nevertheless, I believe that the fair inferences that can be drawn from her decision indicate that she did appropriately weigh them in' making her determination. She considered that all three children had lived in Ireland for five and a half years “especially during the children’s growing years” from “young children to adolescence'.”' In discussing the third factor — the distances between the courts — she noted that defendant testified-that he typically travels to Ireland at least three times a year. She also compared the difficulty to each party that transatlantic travel for , court hearings would necessitate. The plaintiff worked at a local hospital on a per-diem basis and *730 was unable to get a job with vacation time; defendant received a biweekly stipend from his medical practice “whether he works or not”' as long as the funds were available. In addition, the hearing justice found that “the child care problems weigh more heavily on the [pjlaintiff than they do on the [defendant if travel is required for court hearings,” noting that plaintiff testified that she had difficulty finding someone to care for the two children who were then living with her in Ireland, whereas defendant “lives with his significant other who presumably * * * would be available to stay, with [P.j if the defendant had to travel to Ireland.” ,
As for the parties’ financial circumstances, the hearing justice found that defendant was in a better situation than plaintiff. Specifically, she stated that defendant was a partner in a medical practice receiving a biweekly stipend of $5,500 when funds were available and that he had not received the stipend four to- five times in 2014. He also had a 401(k) plan with an approximate balance of $400,000 and another investment account with approximately $25,000. The hearing justice noted that defendant testified he would pay the travel expenses of all witnesses who might have,to travel to Rhode Island. The plaintiff worked as a registered nurse on a per-diera basis, earning approximately $340 per week. The hearing justice further found that; plaintiff had no ability to pay her own travel and hotel expenses, stating that plaintiff had had to borrow funds from her brother to retain a barrister and solicitor in Ireland.
The majority takes particular issue with the hearing justice’s treatment of the fifth factor — any agreement of the parties— holding that she overlooked defendant’s testimony that the forum selection clause was the sine qua non of his willingness to execute the property settlement agreement and to allow the children to move to Ireland with plaintiff. Clearly, an agreement by the parties in a child custody dispute as to which court should exercise jurisdiction is a significant factor; it is not dispositive, however. The hearing justice stated, correctly I believe, that “just because it’s in a property settlement agreement doesn’t make it absolutely binding. The [cjourt must consider all of the factors in the statute, particularly in matters relating to children where the court always has final decision — making authority.” _ I fail to see, however, why a party’s motivation for entering into the agreement should give it enhanced significance. No matter what the inducement, it is a binding contract — indeed in this case it had ripened into a final judgment — and, as such, it is entitled to due consideration. Under the UCCJEA forum non conve-niens calculus, however, it is but one of the factors that must be considered.
It is the sixth factor — location of the evidence — on which the hearing justice placed the greatest emphasis. In so doing, she considered the location of the evidence relative to the factors set forth in Pettinato v. Pettinato, 582 A.2d 909, 913-14 (R.I.1990) that would come into play in a change-of-placement hearing. She considered the fact that at that time two of the children resided with their mother in Ireland and that one of defendant’s primary allegations supporting a change of placement was the children’s deteriorating relationship with their mother. Accordingly, she reasoned, “[vjirtuailly everybody involved with this family who could testify to the [pjlaintiffs relationship with the children, which is one of the mainstays of the [defendant's motion, they’re all in Ireland.” So too, she found, was all of the evidence concerning the children’s adjustment to their Irish home, school, and community. The hearing justice further indicated that plaintiffs mental health would *731 be a major issue and that all of the evidence pertaining thereto would necessarily be in Ireland, including two therapists to whom either she or the children had been referred by “Tusla,” the Irish Child and Family Agency. The hearing justice also considered that all evidence relating to the stability of the children’s home environment would be located in Ireland.
The hearing justice next addressed the ability of each court “to decide the issue expeditiously and the procedures necessary to present the evidence.”. Based upon the little evidence presented to the court, she found this factor to be neutral. The majority concludes that the lack of information about Irish courts should weigh in favor of Rhode Island exercising jurisdiction. I agree. The only information before the court regarding the'judicial process in Ireland concerned the proceedings before the High Court of Ireland. The hearing justice noted the time, that had elapsed between the filing of a special summons on July 30, 2014, and the render^ ing of a “judgment” on September 9, 2014, remarking “[tjhat’s pretty quick action. It certainly was expeditious.” The appropriate forum for the custody-proceedings in Ireland, however, would presumably be the Limerick District Court, not the High Court of Ireland. Further, there was no evidence whatsoever concerning the procedures necessary to present the evidence in the Irish courts.
I think it incumbent on a party seeking to remove a case under the UCCJEA from Rhode Island to another jurisdiction to produce evidence bearing on the evidentia-ry procedures and potential for an expeditious resolution in that jurisdiction. This is particularly true when the other jurisdiction is a foreign country where court practices and procedures may be quite different from those in Rhode Island. In the case under review, neither party requested that the Family Court decline to exercise its jurisdiction; rather the issue was raised by the hearing justice sua sponte: Nevertheless, it was clearly in plaintiffs interest that- the custody determination be made by the Irish courts. She had an opportunity to present evidence relative to this factor, yet did not do so;
Consequently, I agree with the majority that the hearing justice improperly weighed this factor by treating it as neutral. In my opinion, however, her error is not of such a magnitude as to constitute an abuse of discretion in her ultimate conclusion that Ireland was the more appropriate forum. As the majority acknowledges, the lack of evidence in this regard does hot undermine our confidence in the ability of the Irish courts to resolve custody disputes “impartially or expeditiously.” It is a factor, however, that should have tilted in favor of Rhode Island retaining jurisdiction.
Finally, the hearing justice found that the eighth statutory factor — the familiarity of each court with the facts and issues in the pending litigation — weighed “somewhat” in favor of Rhode Island exercising jurisdiction. She then concluded that:.
“in reviewing all of these factors and in considering all of them, the [cjourt must conclude that the weight of the factors, the statutory factors, compels, and particularly where the evidence is located for those motions which are substantive, that the [cjourt must decline to exercise jurisdiction in this matter, and that the more appropriate forum for this matter to be heard'would be Ireland.”
I cannot say - that the hearing justice abused her discretion in reaching this conclusion. She considered all the statutory factors. Although she may not have articulated extensively the relative weight she ascribed to each particular factor, a hearing justice’s findings and analysis of the *732 evidence need not be exhaustive. See, e.g., South County Post & Beam. Inc. v. McMahon, 116 A.3d 204, 210 (R.I.2015); Lembo v. Lembo, 677 A.2d 414, 417 (R.I.1996). The hearing justice did indicate that she considered the location of the evidence to be of particular significance. I also believe that a fair inference from her decision is that she placed a great deal of import on the relative financial circumstances of the two parties, I might have placed greater weight on the parties’ agreement than did the hearing justice, but the issue is not whether I would have reached a different result than she did; the issue is whether she abused her discretion in so doing. See South County Post & Beam, Inc., 116 A.3d at 210 (stating that “we shall not substitute our view of the evidence for [that of the hearing justice] even though a contrary conclusion could have been reached” (quoting JPL Livery Services, Inc. v. Rhode Island Department of Administration, 88 A.3d 1134, 1142 (R.I.2014))). In my judgment, she did not.
The inconveniént-forum analysis under § 16-14.1-19, however, is a two-step process. Having concluded that Ireland was the more appropriate forum, the hearing justice was required to determine that Rhode Island was an inconvenient forum. This inquiry, I suggest, entails the weighing of private — and public — interest factors such as we discussed in Kedy v. A.W. Chesterton Co., 946 A.2d 1171, 1184-85 (R.I.2008). Undoubtedly there will be an overlap of many of the factors already considered in the determination of which forum is more appropriate; nonetheless, under the statute it is a distinct analysis. I would also maintain that the fact that the parties’ forum selection clause had been incorporated into the final judgment should be an important consideration at this stage of the analysis. A final judgment mandating that the Rhode Island Family Court “shall” retain jurisdiction ought to create a heavy burden to overcome in any determination that said court is an inconvenient forum.
I concur with the majority, therefore, that the judgment of the Family Court should be vacated because the hearing justice, having concluded that Ireland was the more appropriate forum, failed to properly consider whether Rhode Island was an inconvenient forum. I disagree, however, with the majority’s holding that a Family Court justice must make an independent finding that Rhode Island is “significantly inconvenient” (quoting Kedy, 946 A.2d at 1178). By so doing, the majority attempts to engraft a common-law concept onto a statutory procedure. In Kedy, 946 A.2d at 1175, we recognized the viability of the doctrine of forum non conveniens in Rhode Island’s common-law jurisprudence. In the context of child custody disputes under the UCCJEA, the doctrine is purely a creature of statute. Section 15-14.1-19(a) provides that the court “may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum * * The statute does not require a finding that it is “significantly” inconvenient, nor should this Court.
Accordingly, I would vacate the judgment and remand the case to the Family Court with instructions that the court determine whether or not the Family Court is an inconvenient forum. As it has been represented to us that two of the parties’ three children are now living in Rhode Island, I would direct the Family Court to reopen the evidence so as to consider the issues under § 15-14.1-19 in light of current circumstances.