CONSOLIDATED DECISION
Before this Court are two motions to dismiss pursuant to the doctrine of forum non conveniens. The Plaintiffs in these matters object to the motions and request guidance from this Court as to the application of Rhode Island Supreme Court opinionKedy v. A.W. Chesterton Co., 946 A.2d 1171 (R.I. 2008), to ongoing asbestos litigation. Due to similarities in the motions pending and the request for guidance in both matters, this Court has consolidated the cases. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
The instant motions initially were brought by Defendant Fisher Scientific ("Fisher" or "Defendant Fisher") in the matter ofDowns v. 3M Co., C.A. No. PC 06-1710, and numerous Defendants[1] (hereinafter "Kroskob Defendants") in the matter ofKroskob v. AGCO, C.A. No. 07-6435.[2] *Page 2 
The Defendants in the two matters pending before this Court will be referred to collectively as "Defendants." Lisa Kroskob, Craig Kroskob, Marilyn Downs, and Erin Downs all object to the motions and will be referred to collectively as "Plaintiffs."
None of these Plaintiffs are residents of Rhode Island. Each has alleged serious injury as the result of his or her, or a family member's, exposure to an asbestos product or products designed, manufactured, or distributed by respective Defendants. None of the Plaintiffs alleges that his or her specific injury occurred in Rhode Island. In each matter, the case has been pending before this Court for an appreciable length of time. Discovery and motion practice processes have been ongoing. The Defendants contend that these matters should be dismissed pursuant to Rhode Island's recently adopted doctrine of forum non conveniens. The Plaintiffs object, maintaining that Rhode Island is a proper venue; no adequate alternative forum exists; *Page 3 
and the burden to the Plaintiffs caused by dismissing the cases would outweigh the benefit to the Defendants of having the cases brought in an allegedly more convenient forum.
Certain key facts are important to note in each of the individual cases. In the Downs matter, Marilyn Downs ("Ms. Downs") and her minor child, Erin Downs, filed a complaint in this Court on March 24, 2006, alleging, inter alia, that Ms. Downs suffered asbestos-related injuries after working as a general laborer on a corn farm in Nebraska in 1979. Defendant Fisher contends that Ms. Downs became ill, was diagnosed, and was treated in Nebraska. In September 2007, Fisher filed a motion to dismiss on the grounds of forum non conveniens, as well as a notice of intent to apply Nebraska law. Argument on the motion to dismiss was heard by this Court on June 25, 2008. The Defendant's contentions followed the analysis as set forth in Kedy and concluded that Nebraska is the more convenient forum for this now three-year-old case.
In the Kroskob matter, Lisa Kroskob and her husband, Craig Kroskob, filed a complaint in this Court on December 3, 2007, alleging that Ms. Kroskob suffered serious injuries as the result of exposure to asbestos products while working on her farm in Colorado, attending church in a building in Colorado, and working in a cafeteria in a local Colorado school, all of which contained asbestos. The Defendants filed or joined motions to dismiss for forum non conveniens on the following dates: June 4, 18, and 24, 2008; July 7 and 18, 2008; February 2 and 10, 2009; July 29, 2009; August 19, 2009; and September 21 and 30, 2009.[3] The Defendants in this matter contend, among other things, that the Kroskobs' case is uniquely centralized in Colorado, with over twenty-five potential witnesses to be deposed and sites to be inspected all located in Colorado. They further contend that Colorado is a particularly adequate alternative due to a statute permitting plaintiffs who have been diagnosed with diseases for which death is imminent to be heard within 120 days of filing. *Page 4 
 II Standard of Review
The Rhode Island Superior Court may hear a matter if jurisdiction and venue are proper. See Kedy,946 A.2d at 1179 nn. 6-7. Under G.L. 1956 § 8-2-14, the Superior Court has original jurisdiction of actions at law if the amount in controversy exceeds $10,000. Pursuant to the venue provisions of the General Laws, venue is proper in Superior Court even if the plaintiffs and defendants are nonresidents. See
G.L. 1956 § 9-4-5 (stating "[i]f no one of the plaintiffs or defendants dwell within the state, and a corporation established out of the state be a party, personal or transitory actions or suits by or against it may, if brought in the superior court, be brought in the court for any county").
The doctrine of forum non conveniens permits "a court [to] resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Kedy, 946 A.2d at 1178 (quoting Gulf OilCorp. v. Gilbert, 330 U.S. 501, 507 (1947)). The doctrine is "founded in considerations of fundamental fairness and sensible and effective judicial administration" and may be used by the trial courts to achieve the "orderly and expeditious disposition of cases." Id. at 1179, 1180 (citations omitted). Essentially, "a court may decline to exercise jurisdiction when the plaintiff's chosen forum is significantly inconvenient and the ends of justice would be better served if the action were brought and tried in another forum." Id. at 1178. There is "much discretion" to grant or deny a motion for dismissal for forumnon conveniens, and a trial court's decision is reviewed under an abuse of discretion standard. Id. at 1185-86. The decision will be upheld if the court has considered all relevant public and private factors and has balanced these factors reasonably. Id. at 1186. *Page 5 
 III Analysis
Prior to the 2008 landmark opinion of Kedy v. A.W. ChestertonCo., the Rhode Island Supreme Court had not ruled on or discussed the common law doctrine of forum nonconveniens.See id. at 1177-78. In Kedy, the Rhode Island Supreme Court formally adopted the doctrine and applied it in a manner patterned after the federal rules.Id. at 1182. The decision in Kedy — which determined that thirty-nine Canadian asbestos cases should be dismissed under the newly-adopted doctrine — is instructive on the application offorum non conveniens in this jurisdiction.Id. at 1189. Subsequent to the Kedy decision, the trial court is granted an opportunity to test facts against this law and to work through the nuances of its application in other matters.See Millipore Corp. v. Travelers Indem. Co.,115 F.3d 21, 34 (1st Cir. 1997) (holding that where the appellate court has determined a different law applies to the case, the initial judgments regarding the facts are best made by the trial court); Vicknair v. Formosa Plastics Corp.,98 F.3d 837, 839 (5th Cir. 1996) (holding it prudent to afford the trial court the first opportunity to apply a new law to the facts of a case).
In this Consolidated Decision, this Court addresses how theKedy opinion affects the matters immediately before it and endeavors to provide some guidance for the forum nonconveniens motions that may follow. Accordingly, this Court will first describe the forum non conveniens
analysis set out by Kedy and then apply the Kedy
analysis to the specific facts raised in the instant motions.
 A Kedy
In formally acknowledging the common law doctrine offorum non conveniens, the Rhode Island Supreme Court held that this State would follow the majority of its sister states by *Page 6 
adopting a test for forum non conveniens similar to the federal doctrine. Kedy, 946 A.2d at 1182. Generally, the threshold step before proceeding to any forumnon conveniens analysis requires a trial court to establish that jurisdiction and venue in the present forum are proper. Id. at 1183 (stating that the court first determines the existence of valid jurisdiction and venue, but noting that forum non conveniens dismissal may be appropriate before making a jurisdictional determination if "discovery concerning personal jurisdiction would burden a defendant with expense and delay for a `scant purpose'").[4] Once valid jurisdiction and venue are confirmed, the trial court then embarks on a two-pronged analysis to determine whether forumnon conveniens dismissal is warranted. Id. "First, the court must decide whether an alternative forum exists that is both available and adequate to resolve the disputed legal issues. . . . Second, the court must determine the inconvenience of continuing in the plaintiff's chosen forum by weighing private-and public-interest factors." Id.
The first prong requires that the trial court make a dual determination: (1) whether the suggested alternative forum is available and (2) whether the alternative forum is adequate.Id. "The availability of an alternative forum rests upon whether `the defendant is amenable to process in the other jurisdiction.'" Id. (quoting Piper AircraftCo. v. Reyno, 454 U.S. 235, 255 n. 22 (1981)). To ensure that this requirement is met, the trial court may "condition a dismissal upon the defendant's consent to submit to jurisdiction in an alternative forum." Id. Next, the trial court determines whether the alternative forum is adequate. Id. at 1184. For example, even an unfavorable change of substantive law will not automatically render the alternate forum inadequate. Id. As long as the remedy provided by the alternate forum is not "so clearly inadequate or unsatisfactory that it is really no remedy at all," then the alternate forum is *Page 7 
adequate. Id.
(quoting Piper Aircraft Co., 454 U.S. at 254). Concerns such as the reduction in the potential amount of a damage award, restrictions on discovery, or the delay caused by changing forums are insufficient to prevent dismissal to an alternative (but more convenient) forum. Id.
The second prong of the forum non conveniens
analysis requires the trial court to weigh certain private-and public-interest factors to assess the convenience of the plaintiff's chosen forum. Kedy, 946 A.2d at 1184. Rhode Island's analysis calls for the consideration and balancing of both private-and public-interest factors in each case. Id. (distinguishing thisforum non conveniens test from others in which the public-interest factors are only considered if "the private-interest factors are close or in equipoise"). Additionally, "[b]ecause the doctrine requires flexibility, central emphasis should not be placed on any one private-or public-interest factor."Id. at 1184.
The private-interest factors comprise a non-exhaustive list, but include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) the possibility of view[ing the] premises, if view would be appropriate to the action; (5) all other practical problems that make the trial of a case easy and inexpensive; (6) the enforceability of a judgment in the alternative forum; and (7) the advantages and obstacles to a fair trial."Id. at 1184-85 (quoting Gulf Oil Corp.,330 U.S. at 508) (numbering added).
The public-interest factors include (1) court administrative difficulties when "litigation is piled up in congested centers instead of being handled at its origin"; (2) the burden of jury duty "imposed on people of a community which has no relation to the litigation"; (3) the "local interest in having localized controversies decided at home"; (4) the interest of the community in *Page 8 
seeing a trial that affects many held "in their view and reach rather than in a remote part of the country"; and (5) the appropriateness of having a trial in a forum that is "at home with the state law that must govern the case, rather than having a court in some other forum untangle [another forum's laws]."Id. at 1185 (quoting Gulf Oil Corp.,330 U.S. at 508-09).
As adopted by the Rhode Island Supreme Court, forumnon conveniens dismissal is appropriate only when "the plaintiff's chosen forum is significantly inconvenient and the ends of justice would be better served if the action were brought and tried in another forum." Id. at 1178. Accordingly, a "defendant invoking forum non conveniens
ordinarily bears a heavy burden in opposing the plaintiff's chosen forum[,]" id. at 1183 (quoting Sinochem Int'lCo. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007)), and "carries the burden of persuasion at each stage of theforum non conveniens inquiry[.]" Id. Clearly a plaintiff's forum choice is afforded significant deference.See Piper Aircraft Co., 454 U.S. at 241 (holding that "a plaintiff's choice of forum should rarely be disturbed");Adelson v. Hananel, 510 F.3d 43, 53 (1st Cir. 2007) (emphasizing that "a heavy presumption weighs in favor of [a U.S. citizen plaintiff's] initial forum choice" and "[the] strong presumption favoring the American forum selected by American plaintiffs"); Reid-Walen v. Hansen,933 F.2d 1390, 1395-96 (8th Cir. 1991) (explaining that "[a]t least when the plaintiff is a U.S. citizen with a real interest in the controversy, the plaintiff's forum choice always should be accorded substantial deference at the outset"). Courts, however, do consider whether the plaintiff's choice is his or her home forum, which is entitled to heightened deference and the presumption of convenience. See Piper Aircraft Co.,454 U.S. at 255-56 (establishing "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable."); In re Factor VIII,484 F.3d 951, 955, 956 (7th Cir. 2007) *Page 9 
(explaining that "if plaintiff is suing far from home, it is less reasonable to assume that the forum is a convenient one, and therefore the presumption in plaintiff's favor applies with less force" (citing Piper Aircraft Co., 454 U.S. at 255-56));see also Kaiser Found. Health Plan of Mid-AtlanticStates, Inc. v. Rose, 583 A.2d 156, 158 (D.C. 1990) (holding that "substantially less deference is accorded to the plaintiff's choice of forum when the plaintiff resides in another jurisdiction, for it is much less reasonable to assume under such circumstances that the [jurisdiction] was selected because it is a convenient forum"). Overall, "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in hishome forum will normally outweigh the inconvenience the defendant may have shown" in arguing for an alternate forum.Piper Aircraft Co., 454 U.S. at 256 n. 23 (quotingKoster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)).
Our Supreme Court also instructs the trial court to examine whether the plaintiff's "forum choice appears to be based on legally valid reasons such as convenience and expense," which also justifies deference to the chosen forum even when it is not the plaintiff's home forum. Id. at 1185. In contrast, "the private interest of a defendant should be afforded more weight when a plaintiff's choice appears to be motivated by forum-shopping objectives such as tactical attempts to harness more favorable laws and remedies," or the intention to choose an inconvenient forum to "vex, harass, or oppress the defendant." Id.
(quoting Gulf Oil Corp., 330 U.S. at 508); seealso Piper Aircraft Co., 454 U.S. at 241 (quotingKoster, 330 U.S. at 524) (holding that a plaintiff's case should be dismissed "when trial in the chosen forum would [burden the defendant] out of all proportion to plaintiff's convenience"). For example, "when [a] plaintiff has selected a distant place where trial will inflict undue expense and inconvenience upon the defendant," the forum nonconveniens doctrine would apply. Kettenbach v.Demoulas, 822 F. Supp. 43, 45 (D. Mass. 1993) *Page 10 
(quoting Park v. Didden,695 F.2d 626, 633 (D.C. Cir. 1982)). However, at the same time, with respect to Defendants who seek to move a matter to a nearby court onforum non conveniens grounds, "the great majority . . . will be unable to satisfy the requisite balancing test when the alternate forum is across town, rather than across the country or international borders." See id. at 45 (finding that the forum non conveniens balancing test did not favor disturbing the plaintiff's selected forum where defendant suggested the more convenient forum was a federal court only a few miles from the plaintiff's chosen state court). Overall, affording deference to a plaintiff's legitimate forum choice keeps Rhode Island law within the spirit of the federal rules upon which it relies. See, e.g., Iragorri v. United TechnologiesCorp., 274 F.3d 65, 71-72 (2d Cir. 2001) ("The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice."). Finally, this Court notes that the deference inquiry focuses on theplaintiff's convenience and does not give "appreciable weight" to counsel's convenience to access the chosen forum.Kedy, 946 A.2d at 1185.[5] *Page 11 
 B Application of Kedy to the Individual CasesPending
Each of the motions currently before this Court has been brought individually. Although the parties in each matter have thoroughly briefed and argued the issues with regard to applying theKedy test for forum non conveniens to their own facts, Plaintiffs have incorporated by reference each other's arguments. The Defendants also have noted the similarities in the facts and in their own arguments for purposes of the forumnon conveniens motions. Therefore, this Court will, for conciseness and clarity, address the cases together. This Court is mindful of the importance of evaluating the cases individually and where applicable, will note any distinguishing facts or arguments.
For the reasons discussed below, this Court finds that Defendants have not met their sizeable burden to show that these matters should be dismissed pursuant to the doctrine of forum nonconveniens as enunciated by Kedy. Although Defendants suggest available and adequate alternative forums in Nebraska and Colorado, an evaluation of the public-and private-interest factors is not "strongly" in Defendants' favor. See Gulf OilCorp., 330 U.S. at 508 (stating that "unless the balance [of private-and public-interest factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). Given this Court's broad discretion to apply the doctrine, it declines to do so on the instant facts. SeeKedy, 946 A.2d at 1185-86. (stating that "[t]he application of the doctrine of forum non conveniens leaves much to the discretion of the trial court"). The amount of litigation activity that has already taken place in this forum and the time, expense, and judicial resources that would be wasted were the parties required to begin anew in another forum further persuade this Court that Plaintiffs' interests outweigh any inconvenience to the Defendants. This decision, however, leaves open the possibility of a forum non conveniens dismissal based on different facts and circumstances. *Page 12 
 1 An Adequate and Available Alternative Forum
To satisfy the first prong of the Kedy test, Defendants must persuade this Court that an alternate forum exists that is both adequate and available. Id. at 1183. With respect to this prong, Defendant Fisher in the Downs case observes that Nebraska is the state where Ms. Downs lived, was injured, and was treated. Fisher contends that because Nebraska is a state in the United States, it is a presumptively adequate forum. Fisher acknowledges that Nebraska does not have an asbestos docket; however, it proffers an affidavit of a practicing attorney in Nebraska, stating that Nebraskan courts are quite competent, and they protect due process and equal rights. The Kroskob Defendants contend that Ms. Kroskob lived and worked in Colorado her entire life and that Colorado — while it may not offer the same remedies to products liability plaintiffs as does Rhode Island — has established case management orders for asbestos litigation with an experienced judge presiding over the asbestos docket. The Defendants in both matters agree that they would submit to jurisdiction in their proposed alternate forums.
The Plaintiffs contend that the mere assertion that another forum is a state in the Union, or that it has an active asbestos docket, is insufficient to meet the Defendants' burden of proving the adequacy of an alternative. The Plaintiffs assert that the long and unique history of asbestos litigation in Rhode Island is marked by twenty-five years of case resolution and a high level of efficiency. They argue that such history highlights the inadequacy of alternative forums. Plaintiffs argue that Ms. Downs[6] and Ms. Kroskob are suffering from terminal mesothelioma and will not survive to see their actions litigated if they are forced to restart the process in an alternative forum. Because of the short time frame, Plaintiffs contend no other forum will be adequate. *Page 13 
This Court recognizes Plaintiffs' strong interests, but is persuaded that the first prong of the Kedy analysis is met by Defendants. To establish that an alternative forum is available, Defendants must show that they are amenable to service of process in the other jurisdiction. Id. The Defendants in the current matters are national companies that have agreed personal jurisdiction likely could be exercised in any state in the United States. Defendants have further indicated that they would consent to jurisdiction in their suggested alternative forums. Assumingarguendo that Defendants will consent to jurisdiction, this Court finds the suggested alternatives are available per theKedy analysis. See id.
This Court also finds that the alternatives are adequate. As noted by the Kedy Court, "the bar for establishing that the alternative forum is adequate historically has been quite low . . . the alternative forum is adequate as long as the plaintiff will not be deprived of all remedies or subjected to unfair treatment."Id. at 1184 (quoting 14D Charles Alan Wright, Arthur R. Miller Edward H. Cooper, Federal Practice andProcedure § 3838.3 (3d ed. 2007)). In each of these actions, the Defendants have noted that their suggested alternative forums have active asbestos litigation and, in the Kroskob case, an experienced justice presiding. They further contend that there are remedies available to the Plaintiffs in the noted jurisdictions.See, e.g., Olivotto v. DeMarco Bros. Co.,732 N.W.2d 354 (Neb. 2007) (affirming in large part a jury verdict for the plaintiff in a product liability case for asbestos exposure); Fibreboard Corp. v. Fenton,845 P.2d 1168 (Colo. 1993) (affirming a jury verdict in favor of a plaintiff in asbestos litigation).[7] *Page 14 
Because the bar for adequacy is quite modest, Plaintiffs' contention that only this Court could efficiently and speedily accommodate their constitutional right to be heard is insufficient to show that the courts of Nebraska and Colorado are inadequate. This Court is satisfied that the Plaintiffs would have remedies available in either one of these sister jurisdictions. Even assuming that this Court could provide better remedies, more lenient discovery, or a speedier trial for these terminally ill Plaintiffs, their contentions would still fail to successfully rebut Defendants' arguments that the alternatives are available and adequate. There is no indication there would be a total lack of remedy available, nor is there the likelihood of unfair treatment in these forums.See Kedy, 946 A.2d at 1184. As such, this Court finds the suggested alternatives are adequate per the Kedy analysis.See id.
Because the Defendants suggest jurisdictions that are both adequate and available, the first prong is met in favor of the Defendants. This Court now turns to the second prong of theforum non conveniens analysis — an evaluation of the private-and public-interest factors. Id.
 2 Private Factors for Consideration Kedy articulated seven private-interest factors, but noted that the list was not exhaustive, nor was it possible to "catalogue all the circumstances that may or may not lead to a forumnon conveniens dismissal." Id. With that in mind, this Court first considers the "relative ease of access to sources of proof."Id. at 1184-85 (quoting Gulf Oil Corp., 330 U.S. at 508). In the Downs case, Defendant Fisher avers that every single source of proof is located in Nebraska, where Ms. Downs lived and worked. The Kroskob Defendants present similar arguments, stressing that their evidence is located in Colorado, where the respective Plaintiff lived, worked, was injured, and was treated. Each Defendant contends that all information regarding injury and damages is located outside Rhode Island. *Page 15 
This Court is mindful of the Kedy Court's assertion that evidence located out-of-state is much less convenient and accessible for both parties. Seeid. at 1187 (stating that "[a]ccess to proof is clearly less convenient here than in any jurisdiction where any of the defendants or plaintiffs are situated or where the injury or allegedly tortious conduct occurred"). In fact, "dismissal is favored when the majority of proof is located in another state." 3M Co. v. Johnson,926 So. 2d 860, 866 (Miss. 2006) (describing the facts inMo. Pac. R. Co. v. Tircuit,554 So. 2d, 878, 883 (Miss. 1989)). This Court, however, notes that in Kedy, the Rhode Island Supreme Court was presented with a much more significant evidentiary inconvenience than in the instant matters. In Kedy, "most if not all" evidence regarding damages was located in Canada. Kedy, 946 A.2d at 1188. Acquiring evidence from a foreign country is considerably more difficult than obtaining evidence located in a different state in the same nation. See, e.g., Murray v. British Broad.Corp., 81 F.3d 287, 295 (2d Cir. 1996) (noting the difficulty of obtaining documents from a foreign country); Pain v. United Tech.Corp., 637 F.2d 775, 786-88 (D.C. Cir. 1980), cert.denied, 454 U.S. 1128 (1981) (where most of the documents and testimonial evidence were outside the United States and "immune from the compulsory process of American courts," if "trial were to be conducted in the United States, the inability of both parties to obtain the full panoply of relevant . . . evidence would greatly hinder fair resolution of the dispute"). In the instant cases before this Court, all evidence is located in the United States where such evidence will be much less difficult to obtain than the foreign Canadian evidence at issue in Kedy.
Nonetheless, this Court notes the Kedy Court's recognition that "much of the evidence necessary is in Canada or otherUnited States jurisdictions." Kedy,946 A.2d at 1187 (emphasis added). Our Supreme Court explained:
 [t]he trial justice observed that the injuries and treatment occurred in Canada where Plaintiffs are residents. The complaint . . . *Page 16 
contains a long recitation of tortious acts, none of which are alleged to have occurred in Rhode Island. No witnesses, workplace sites, or any other relevant evidence appear to be situated in the Ocean State. Moreover, most if not all of the relevant information on the issue of damages is in Canada or jurisdictions other than Rhode Island. Id.
The Kedy Court held that "[a]ccess to proof is clearly less convenient here [in Rhode Island] than in any jurisdiction where any of the defendants or plaintiffs are situated or where the injury or allegedly tortious conduct occurred," a conclusion that this Court also reaches with respect to the matters now before it.Id. In the instant cases, although evidence is available within the United States and not in a foreign county, accessing documents and other information from Rhode Island is "clearly less convenient" than it would be in either Colorado or Nebraska, where the tortious acts took place. Though a closer question than inKedy, this Court still finds that the first private-interest factor weighs in favor of the Defendants.
The next two private-interest factors concern witnesses, specifically the availability of a compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses. Seeid. at 1184. With regard to the attendance of witnesses,Kedy noted "significant administrative difficulties may arise with respect to compelling the attendance of [out-of-state and Canadian] witnesses." Id. at 1188; see also3M Co., 926 So. 2d 865-66 (dismissing for forumnon conveniens after determining that the parties and witnesses had no connection to the plaintiff's forum choice). As to these points, the Defendants in the instant cases contend that while letters rogatory are available and have been employed by this Court for various deponents, this process is cumbersome. Defendants also assert that this Court cannot compel a witness from another jurisdiction to appear in a Rhode Island court. And even where a witness is willing, Defendants claim that the cost of obtaining his or her testimony, which requires the reimbursement of time, travel, and hotel expenses, renders the selection of *Page 17 
Rhode Island as a forum prohibitive. Defendants note that such cost would be significantly decreased if the cases were brought in a state where the majority of witnesses reside.
This Court acknowledges that its subpoena power cannot compel out-of-state witnesses to appear at trial in Rhode Island. Further, maintaining a trial outside the state where the majority of witnesses are located may result in added cost and inconvenience for the Defendants. As stated in Kedy, "[b]ecause no one other than the attorneys are located in Rhode Island, literally all witnesses and parties would have to travel." Kedy, 946 A.2d at 1188. The Rhode Island Supreme Court held that this factor weighed in favor of dismissal in the Kedy case, but also noted that modern technology has "greatly relieved the burdens of long-distance litigation." Id. at 1188; seealso Manu Int'l v. Avon Prods., Inc.,641 F.2d 62, 65 (2d Cir. 1981) (agreeing with the "recent sentiment . . . [of] evaluating the forum non conveniens
factors in light of the increased speed and ease of travel and communications, especially when a key issue is the location of witnesses").
This Court agrees with Kedy's sentiment that advancements in technology — such as teleconferencing and videotaping, which are used extensively — have made travel far less necessary and have reduced the expense to litigants. Seeid. at 1188-89. However, it is acknowledged that "fix[ing] the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on depositions is to create a condition not satisfactory to courts, jur[ies], or most litigants." Gulf Oil Corp., 330 U.S. at 511. The Supreme Court of Texas also held that the now routine legal practice of taking depositions nationwide and the reality that asbestos experts are deposed outside forum states on a regular basis did not override the fact that much of the evidence on damages still was beyond its court's subpoena power. See In reGeneral Elec. Co., 271 S.W.3d 681, 691-92 (Tex. 2008) (explaining that *Page 18 
"[r]easonable access to witnesses and evidence is a fundamental need in regard to any trial-asbestos or otherwise"). Similar to the argument made in General Electric Co., the Kedy
plaintiffs maintained that dismissal was "not appropriate for asbestos litigation because expert witnesses are [regularly] deposed across the United States." Kedy, 946 A.2d at 1187 n. 14. However, our Supreme Court in Kedy did not find this argument persuasive because the plaintiffs did not name one expert witness that was located within the state. Id. Arguably, it would be more convenient to choose a forum where at least one asbestos expert or one witness, for that matter, resides.
Focusing on the facts of the instant case, this Court finds that the absence of a compulsory process for the attendance of unwilling witnesses weighs against keeping these cases in Rhode Island, but is unconvinced that modern technology cannot sufficiently reduce the cost of obtaining the attendance ofwilling witnesses. The Kroskob and Downs witnesses and parties are located within the United States, rather than in a foreign country, and even Kedy acknowledges that advancements in technology have made live appearances at trial far less necessary. This Court notes that Gulf Oil was decided in 1947, well before the advent of the technologies referenced byKedy. See Manu Int'l,641 F.2d at 65 (agreeing that "no forum [is] as inconvenient (today) as it was in 1947" (quoting Fitzgerald v. Texaco, Inc.,521 F.2d 448, 457 (2d Cir. 1975))). In addition, this Court is persuaded that asbestos litigation has a national reach — with defendants capable of defending in any state across the United States — considering the federal judiciary directs most, if not all, federal multi-plaintiff/multi-defendant asbestos cases to a single district regardless of forum nonconveniens issues. See In re AsbestosProds. Liab. Litig., 771 F. Supp. 415 (J.P.M.L. 1991) (holding that "pursuant to statute governing transfer in multidistrict cases [28 U.S.C. § 1407], . . . actions involving allegations of personal injury or *Page 19 
wrongful death caused by asbestos would be transferred to the Eastern District of Pennsylvania for pretrial proceedings, considering that actions involved common questions of fact, and that centralization of actions would best serve convenience ofparties and witnesses and promote the just and efficient conduct oflitigation") (emphasis added). Essentially, the federal courts require plaintiffs, defendants, and witnesses to travel to the Eastern District of Pennsylvania because asbestos cases by nature litigate the same issues and rely on testimony and evidence from multiple districts. Georgine v. Amchem Products, Inc.,83 F.3d 610, 619 (3d Cir. 1996). It would be a waste of judicial resources to handle these cases piecemeal in individual districts.See Georgine v. Amchem Products, Inc.,157 F.R.D. 246, 256 (E.D. Pa. 1994). Accordingly, this Court duly notes that federal courts do not find it oppressively inconvenient for defendants to present their cases in one state even if the witnesses are located far from that forum.
Although in Kedy the plaintiffs and many witnesses were not residents of the United States, here the second factor — the chosen forum's ability to compel unwilling witnesses — still weighs in favor of Defendants' motions to dismiss even though the instant cases' prospective witnesses are United States citizens. This Court cannot deny that the absence of a compulsory subpoena process whereall possible witnesses are not residents of Rhode Island is unfairly burdensome for the Defendants. Conversely, this Court finds that private-interest factor three — the cost of obtaining the attendance of willing witnesses — does favor Plaintiffs. Modern technology can overcome the expense of obtaining the attendance of, and access to, willing witnesses.
This Court next considers whether, if appropriate to the action, it is possible to conduct a view of property from the forum state.See id. at 1184-85. The Defendants contend that personally viewing the workplaces, homes, and other locations where the alleged exposures to *Page 20 
asbestos occurred is paramount to their defense, and that such views would be nearly impossible without bringing the action in the respective alternative states. However, given the sophistication of modern technology — photography, video, live streaming, webcams — this Court finds that a sufficient view of the property would be possible from a Rhode Island courtroom. Likewise, the Defendants' contention that they would take a jury to a site containing hazardous materials causes this Court to pause. This Court notes the Kedy Court's comments that "if the view of any premises were relevant and desirable, it would not occur in Rhode Island." Id. at 1188-89. However, believing that technology could overcome the distance barrier and should be utilized in a case involving hazardous materials, this Court finds that viewing the property is unnecessary. Therefore, this consideration does not augment Defendants' motion for forum nonconveniens and favors keeping these cases in the current forum.
The fifth private-interest factor is a catch-all, requiring this Court to consider all other practical problems that make the trial of a case easy and inexpensive. See id. at 1184-85.Kedy recognized that "significant administrative difficulties may arise with respect to compelling the attendance of witnesses and the production of documents" if the sources are in Canada and the forum is Rhode Island. Id. at 1188. Likewise, the Defendants in the instant cases contend that there is no indication that litigation will be easier or less expensive if the action remains in Rhode Island. This Court is mindful of the inconveniences that arise in the discovery process but notes that such instances may arise in any case. For example, the logistics of arranging for a deposition with any witness may become challenging, and many witnesses may be from out-of-state regardless of where the litigation is brought. This Court again notes that in view of rapid technological advancements in the area of teleconferencing, such problems may be overcome relatively inexpensively. However, this Court reiterates the observation of the Texas Supreme *Page 21 
Court in General Electric that "a promise to produce some or even most evidence does not cure the logistical problems created by lack of effective compulsory process for trial." In re GeneralElec. Co.,271 S.W.3d at 691 (citing Gulf Oil Corp., 330 U.S. at 508). Finding such observation persuasive, this Court agrees that keeping these cases in Rhode Island will not make them any easier or less expensive. Accordingly, this factor weighs on the side of the Defendants.
Kedy's final private-interest considerations direct the trial court to examine the enforceability of a judgment in the alternative forum and the advantages and obstacles to a fair trial were the cases to remain in the chosen forum.Id. at 1184-85. The Defendants argue that these factors also weigh in favor of their suggested alternative forums. This Court disagrees. With respect to the enforceability of a judgment in the alternative forum, this Court again notes the significant distinguishing fact between these cases and Kedy: the alternative forums suggested in the present cases are within the United States, rather than a foreign country, which means that any judgment in Rhode Island would be enforceable in the alternative forum. "Although the Full Faith and Credit Clause of the U.S. Constitution applies to recognition and enforcement of judgments among the sister states, it does not apply to judgments rendered in foreign countries." Michael Traynor, An Introductory Frameworkfor Analyzing the Proposed Hague Convention on Jurisdiction andForeign Judgments in Civil and Commercial Matters: U.S. and EuropeanPerspectives, 6 Ann. Surv. Int'l Comp. L. 1, 4 (2000) (citing U.S. Const. art. IV, § 1). Therefore, this Court is not persuaded that Defendants have shown any obstacle to the enforceability of judgments rendered in this State by the "home states" of the Plaintiffs. With regard to causing obstacles to fair trials, this Court is mindful of the possible inconveniences that Defendants will experience in deposing witnesses and obtaining evidence out-of-state; however, it finds that these obstacles will not interfere with Defendants' fair trials in a way that will be *Page 22 
oppressive and "out of all proportion to the plaintiff's convenience." Kedy, 946 A.2d at 1183. As such, these private-interest factors also weigh favor the Plaintiffs.
 3 Public Factors
In addition to private-interest factors, the trial court must consider a non-exhaustive list of public-interest factors before ruling on a forum non conveniens motion to dismiss. Public-interest factors are evaluated on equal footing with private factors. See id. at 1185 (stating that Rhode Island follows the view that forum nonconveniens analysis requires an assessment of all public and private factors, rather than the view that restricts an examination of public-interest factors to cases where the private-interest factors are "in equipoise").
The first of these public-interest factors is the administrative difficulty when "litigation is piled up in congested centers instead of being handled at its origin."Id. (quoting Gulf Oil Corp., 330 U.S. at 508-09). Pursuant to the then-Presiding Justice's Order, Super. Ct. Admin. Order, No. 96-2 (Jan. 29, 1996), this Court has been responsible for the case management of all asbestos-related litigation in Rhode Island since 1996. The Defendants suggest that the asbestos docket is overburdened by cases brought by parties who are not domiciled or located in the State. This Court disagrees. This Court has stated before, and reiterates here, that it is not inundated with asbestos litigation. The docket is active, but neither unmanageable nor unwieldy. This Court recognizes theKedy Court's caution that "we must [] be cognizant of the strains such litigation places on Rhode Island's judicial resources," id. at 1188, but finds that this public-interest argument will not be persuasive until the docket becomes overly burdensome or inefficient. As this situation has not occurred, public-interest factor one favors the Plaintiffs.
This Court next considers "the burden of jury duty when the community has no relation to the litigation." Id. InKedy, our Supreme Court predicted that "a [Rhode Island] jury may *Page 23 
have to sit through a complicated trial that literally has no connection to Rhode Island besides a generalized interest that is constant throughout the entire United States and beyond . . . the interest in preventing asbestos-related diseases."Id. at 1188. Our Supreme Court, however, also noted: "[o]ur courts in Rhode Island must stand open to provide remedies to those who have been injured and to treat all litigants fairly" in recognizing that products-liability and negligence litigation can "transcend geographical boundaries." Id. The Court then qualified its recognition with the admonition that the Rhode Island trial "courts need not resolve disputes of all persons who choose to file suit in Rhode Island."Id. at 1188-89 (emphasis added) (citing approvingly the observation of Kinney System, Inc. v. Cont'l Ins. Co.,674 So. 2d 86, 88 (Fla. 1996), that "[n]othing in our law establishes a policy that Florida must be the courthouse for the world, nor that the taxpayers of the state must pay to resolve disputes utterly unconnected with this state's interest").Kedy concluded that the thirty-nine asbestos cases before the Rhode Island Supreme Court lacked "any nexus with the state of Rhode Island," which weighed in favor of dismissal. Id.[8] *Page 24 
This Court comes to this same conclusion in the instant matters. Despite the fact that no jury has yet to be impaneled in an asbestos case, this Court realizes the likelihood that such a day will come. To justify this State's jury service and use of court resources,Kedy requires more than a "generalized nexus" between the case and Rhode Island. Because there is no such nexus between Nebraska and Colorado asbestos injuries and Rhode Island in these matters, this Court is persuaded this considerations favors Defendants.
To evaluate the third and fourth public-interest factors, this Court examines the interest of having "localized controversies decided at home" and having trials that directly affect local citizens conducted "in their view and reach, rather than in a remote part of the country."Id. at 1185 (quoting Gulf Oil Corp., 330 U.S. at 508-09). Without question, the parties and circumstances surrounding these cases are not local to Rhode Island. Nevertheless, the issues raised in the actions are not so novel or unique to their point of origin that this Court could not effectively manage the cases.See Interface Partners Int'l. v. Hananel,575 F.3d 97, 101 (1st Cir. 2009) (finding that "trier's relative familiarity with the appropriate rules of decision" is a parallel consideration to whether a localized controversy should be decided in a home court). As stated in Kedy, this Court has effectively administered the asbestos docket for many years.See Kedy, 946 A.2d at 1186. It is a close question whether justice is better served if the case is decided by a home court or a court well-experienced in asbestos litigation where the matters have already been pending. Nonetheless, because judicial preference favors having a local court hear its local cases, this Court finds that factors three and four must weigh on the side of the Defendants.
Finally, the Court evaluates the appropriateness of having a trial in a forum that is "at home with the state law that must govern the case, rather than having a court in some other forum untangle [the laws of another forum]." Id. at 1185. The Kedy Court noted that "the *Page 25 
likelihood that Canadian or other foreign law would apply in these cases would place additional though not insurmountable burdens upon our courts." Id. at 1188. If the application of Canadian law is not insurmountable, certainly the application of Nebraskan or Coloradoan law would not be insurmountable either. Untangling the laws that apply to these instant cases is less problematic than the burden of translating laws in another language or based on an alternate judicial system — the issues this public-interest factor seeks to address. SeeReid-Walen v. Hansen, 933 F.2d 1390, 1401 (8th Cir. 1991) (citing Rudetsky v. O'Dowd, 660 F. Supp. 341 (E.D.N.Y. 1987)) (stating that "a court should be less reluctant than usual to apply foreign law when there is no language barrier"); Sun TrustBank v. Sun International Hotels, Ltd.,184 F. Supp. 2d 1246, 1266 (S.D. Fla. 2001) (finding that the foreign law public interest factor did not weigh against the forum court from hearing the case where there were "no language barriers to the Court's understanding of Bahamian law and . . . Bahamian law is derived from English common law and has many similarities to Florida law"); Chandler v. Multidata SystemsIntern. Corp., Inc., 163 S.W.3d 537, 551 (Mo. App.Ct. 2005) (holding that the application of foreign law factor did "burden[] the trial court in this case . . . [as evidenced by] the need for language interpretation . . . [the] appl[ication of] Panamanian law"). Accordingly, untangling the laws of Nebraska and Colorado would not create a significant hardship for this Court. As such, public-interest factor five weighs in favor of the Plaintiffs.
Overall, this Court concludes that the five public-interest factors evaluated here do not advance Defendants' arguments for dismissing the Downs and Kroskob matters forforum non conveniens reasons. Most importantly, the administrative difficulty factor does not warrant dismissal at this juncture. At the same time, this Court remains cognizant of our Supreme Court's reliance on Kinney System,Inc.'s pronouncement "that there is no legal policy that *Page 26 
taxpayers of the state must pay to resolve disputes utterly unconnected with the state's interests."Id. at 1189 (quoting Kinney System, Inc.,674 So. 2d at 88). This Court also notes that unless "the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources," the court may not hear the case in the plaintiff's chosen court.Id. at 1189 (quoting Pain, 637 F.2d at 791). Such a sufficient interest was lacking in Kedy, wherein our Supreme Court found that there was "no connection to Rhode Island besides a generalized interest that is constant throughout the entire United States and beyond." Id. at 1188. A nexus is also lacking in the instant matters. However, this Court finds other important public-interest factors favor the Plaintiffs — namely, the asbestos docket is not a "congested center," and the application of different states' laws will not be too burdensome for this Court to manage. This Court gives these factors considerable weight in favor of the Plaintiffs' forum while remaining mindful that "judicial interests are at their zenith, and the expenditures of tax-funded judicial resources [are] most clearly justified when the issues involve matters with a strong nexus to [the state's] interest." Kedy, A.2d at 1189 (quotingKinney System, Inc., 674 So. 2d at 91).
 4 Deference to Plaintiffs' Forum
In addition to evaluating private-and public-interest factors, this Court must examine the degree of deference owed to the Plaintiffs' choice of forum. Kedy, 946 A.2d at 1188. "Unless the balance [of private-and public-interest factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp.,330 U.S. 501 at 508. Accordingly, "a heavy presumption weighs in favor of [a U.S. citizen plaintiff's] initial" choice.Adelson, 510 F.3d at 53 (emphasis added). Courts, however, do consider whether the Plaintiff has chosen his or her home forum, which is entitled to heightened deference and the presumption of convenience. See, e.g, Gates LearjetCorp. v. Jensen, 743 F.2d 1325, 1335 (9th Cir. 1984) *Page 27 
(quoting Piper Aircraft Co., 454 U.S. at 265) (explaining "that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum"). In fact, when the plaintiff does not choose the home forum, some courts will not presume that the foreign forum choice is reasonable and convenient.See, e.g., Quixtar Inc. v. Signature Mgmt. Team,LLC, 566 F. Supp. 2d 1205, 1207 (D. Nev. 2008) (collecting cases and stating that "some courts have afforded less deference to a plaintiff's choice of forum where the plaintiff has not chosen its home forum"). Nonetheless, even if a plaintiff's forum choice warrants less deference because it is not the home forum, this does not mean the choice is afforded no deference. See 14D Wright, Miller Cooper, Federal Practice andProcedure § 3828.2 (2d ed. 1986) (describing how courts establish the level of deference for plaintiff's forum choice). Regardless of whether the plaintiff selects a home or foreign forum, a court's most important examination is whether the plaintiff's forum choice was made with the purpose of forum shopping or with an intention to "vex, harass, or oppress the defendant." Kedy,946 A.2d at 1185 (quoting Gulf Oil Corp., 330 U.S. at 508);see also Piper Aircraft Co.,454 U.S. at 257 n. 23 (stating that the forum nonconveniens analysis turns on whether "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, [in which case] dismissal is proper.").
In the instant cases, Plaintiffs acknowledge that Rhode Island is not their home forum, but maintain that they selected this forum for legitimate reasons: the experience this Court has with asbestos-related litigation, the efficiency and speed with which they believe their matters will be heard, and because virtually all cases in Rhode Island have been settled, effectively resolved, or dismissed. The Plaintiffs assert that their decision to choose a forum with a history of settlement counters any argument that they selected Rhode Island for purposes of seeking higher jury verdicts. In fact, there have been no jury verdicts in this State from which Plaintiffs *Page 28 
could make such an assumption. The Plaintiffs further contend that their choice of forum is in no way made to inconvenience Defendants, which are national corporations with national counsel. For these reasons, this Court is satisfied that Plaintiffs chose this forum for legally valid reasons, and therefore, their private interests should be afforded great weight. See Kedy,946 A.2d at 1185.
 5 Discretion To Exercise Jurisdiction
To deny Plaintiffs the right to pursue their claims in Rhode Island, Defendants would have had to persuade this Court that available and adequate alternative forums exist and that the private-and public-interest factors strongly outweigh the deference owed to Plaintiffs' legitimate forum choice. With respect to balancing the private-and public-interest factors, theKedy Court stated: "[b]ecause the doctrine requires flexibility, central emphasis should not be placed on any one private-or public-interest factor." Id. at 1184; seealso Piper Aircraft Co., 454 U.S. at 249- 50 (stating that focusing on one factor would cause "the forum non convenience doctrine [to] lose much of the very flexibility that makes it so valuable"). Our Supreme Court further noted that "[t]he doctrine offorum non conveniens is an equitable principle," and "the application of the [] doctrine leaves much to the discretion of the trial court." Kedy,946 A.2d at 1178, 1185- 86. Indeed, "[f]or this reason, the court has refused to lay down any `rigid rule' to govern a court's discretion and has favored a case-by-case balancing."Kettenbach, 822 F. Supp. at 45; see alsoAbbott v. Owens-Corning Fiberglass Corp.,444 S.E.2d 285, 290 (W.Va. 1994) (quotingNorfolk W. Ry. Co. v. Tsapis,400 S.E.2d 239, 243 (W.Va. 1990)) ("the doctrine must be applied flexibly and on a case-by-case basis").
Like the Kettenbach and Abbott Courts, this Court also declines to lay down a "rigid rule." Such a rule may prevent Rhode Island courts from "stand[ing] open to provide remedies *Page 29 
to those who have been injured and to treat all litigants fairly" at a time when "products-liability and negligence litigation . . . transcends geographical boundaries." Kedy, 946 A.2d 1188-89. Alternatively, a blanket rule could burden Rhode Island with "resolving disputes of all persons who choose to file suit in Rhode Island" potentially creating a "courthouse for the world" and a policy "that the taxpayers of the state must pay to resolve disputes utterly unconnected with this state's interest."See id. at 1189 (quoting Kinney System, Inc.,674 So.2d at 88 and Pain, 637 F.2d at 791). Finding that neither outcome advances the objectives of the doctrine offorum non conveniens as enunciated byKedy, this Court evaluates each matter on a case-by-case basis.
With respect to the cases herein, this Court finds that the Defendants have established that adequate and available alternate jurisdictions exist, but is not convinced that private-and public interest factors "strongly . . . favor the defendant."Gulf Oil Corp., 330 U.S. 501 at 508. As such, this Court does not find that Plaintiff's forum should be "disturbed." Seeid. Mindful that these matters have been pending before this Court for an appreciable length of time and were filed prior to our Supreme Court's adoption of the doctrine of forumnon conveniens in Kedy, this Court is further persuaded to deny the motions to dismiss. Discovery and motion practice processes have been ongoing in these cases, and Plaintiffs have cooperated (and will continue to cooperate) with Defendants in obtaining out-of-state discovery.[9] This Court recognizes that "[t]he forum non conveniens doctrine is grounded in concern for the costs that must be expended in litigation and the convenience of the parties." Lony v. E.I. DuPont de Nemours Co., 935 F.2d 604, 614 (3d Cir. 1991). Furthermore, "whenever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against a forum non conveniens dismissal greatly *Page 30 
increases." Id.; see also Mercier v. SheratonInt'l, Inc., 981 F.2d 1345, 1356-57 (1st Cir. 1992) (agreeing with Lony that the more litigation activity that has taken place in the instant case in the current forum, the more deference to plaintiff's forum); Lacey v. Cessna Aircraft Co.,849 F. Supp. 394, 398 (W.D. Pa. 1994) (denying the "motion to dismiss under the doctrine of forum nonconveniens . . . in light of the completion of discovery, filing of pretrial statements, and potential duplication of extensive discovery if the case were heard in British Columbia"). The amount of litigation activity that has already taken place in this forum and the time, expense, and judicial resources that would be wasted were the parties required to begin anew in another forum additionally persuade this Court that Plaintiffs' interests outweigh any inconvenience to the Defendants.
Finally, this Court is aware of the serious health issues of the Plaintiffs, one of whom has already died. SeeSystemation, Inc. v. Engel Indus., Inc.,992 F. Supp. 58, 63 (D. Mass. 1997) (finding that "the plaintiff's choice of forum is to be given a degree of deference . . . [,] reasonableness tips sharply in Systemation's favor[.] [The Plaintiff-inventor] is 85 years old and in failing health"); Exparte Ford Motor Credit Co., 772 So. 2d 437, 444-45 (Ala. 2000) (directing the trial court to consider whether the alleged change in a plaintiff's medical condition affects its decision to dismiss forforum non conveniens). In the instant matters, this Court's consideration of the Plaintiffs serious conditions further weighs in favor of keeping the cases in the chosen forum.
By weighing the private and public interest factors and according significant deference for the Plaintiff's legitimate forum choice, this Court is satisfied that proceeding in Rhode Island would not "establish . . . oppressiveness and vexation to defendant[s] out of all proportion to plaintiffs' convenience," Piper AircraftCo., 454 U.S. at 242 (quoting Koster, 330 U.S. at 524), *Page 31 
nor would "the chosen forum [not be] appropriate because of considerations affecting the court's own administrative and legal problems." Id. Accordingly, this Court is not convinced that "the ends of justice would be better served if the action[s] were brought and tried in another forum." Kedy,946 A.2d at 1178.
 IV Conclusion
For the foregoing reasons, this Court denies Defendants' motion to dismiss for forum non conveniens. Counsel shall submit the appropriate order for entry.
[1] Since the filing of these motions, a number of the Defendants, including Fisher Scientific, have either settled or have been dismissed from the case or cases. For the purposes of these motions, however, this decision addresses those parties who were viable at the time of filing. Accordingly, the then-moving Defendants and those Defendants initially joining in the motion to dismiss are Aftermarket Auto Parts Alliance, Agco, AlliedSignal Inc. n/k/a Honeywell International, American Biltrite Inc., American Cyanamid, American Suzuki Motor Corp., Arvinmeritor, Inc. individually and as successor in interest to Rockwell Automotive and Duramaster, Aurora Pump Co., Bell Gossett Co., Bondex International Inc., Budd Co., Buffalo Pumps, Inc., CBS formerly Westinghouse Electric, CNH America LLC, Cameron, Caterpillar Inc., CertainTeed Corp., Chrysler LLC, Conwed Corp., Crouse-Hinds, Crane Co., DAP Inc., Deere and Co., Domco Products Texas LP, DuPont, Duratech (Haybuster), Eaton Corp., Eaton Electrical Inc. as successor in interest to Culter-Hammer Inc., Fisher Scientific, Ford Motor Company, Foster Wheeler, General Motors Corp., Genuine Parts Co., Goodyear, Gorman-Rupp Co., Homasote, J.C. Whitney Co., Ingersoll-Rand, Kentile Inc., Lennox Industries Inc., Link-Belt Construction Equipment Co., Mack Trucks Volvo Trucks North America, Maremont Corp., Marland Clutch, Navistar, Inc. f/k/a International Truck and Engine Corp., NACCO Materials Handling Group Inc. as successor in interest to Hyster Co., PACCAR, Inc., Pecora, Pneumo Abex LLC, Polaris, RPM International Inc., Robert Bosch LLC, Rockwell Automation Inc., Shelbourne Reynolds, Square D Co., Standard Motor Products Inc., Sterling Fluid Systems (USA) LLC, TH Agriculture Nutrition, TRW Automotive, Inc., Tenneco Automotive, Terex Corp., Timken U.S. Corp., Toyota Material Handling U.S.A. Inc., Toyota Motor North America Inc., Toyota Motor Sales U.S.A. Inc., Tractor Supply Co., Trailmobile, Trane US Inc. f/k/a American Standard Inc., Transtar, United Gilsonite Laboratories, Union Carbide Corporation, Volkswagen Group of America Inc., Warner Electric, Wichita Clutch, Wilson Trailer Co. Other Defendants later joined in the motion to dismiss for forumnon conveniens and incorporated and adopted by reference the original arguments. These joining Defendants are: A.W. Chesteron Co., BRP U.S. Inc., Detroit Diesel Corp., Doosan Infracore America Corp., The Dow Chemical Company, Georgia-Pacific LLC f/k/a Georgia Pacific Corp., Hopeman Brothers Inc., Komatsu America Corp., Krause Corp., Navistar, Inc., Polaris Industries Inc., Timpte Industries Inc., Thyssenkrupp Budd Co., Tyco International Ltd., Tyco Fire Products L.P., Union Carbide Corp., Vermeer Manufacturing Co., Yamaha Motor Corp. U.S.A.
[2] Defendant Northup Grumman, in the matter of Burns v. AGCOCorp., C.A. No. 07-5443, also appeared before this Court to submit a motion to dismiss in these consolidated cases. Subsequent to their argument, however, the Burns case was resolved. Accordingly, this Court need not examine the facts of that case in this decision.
[3] Several Defendants joined in the motions, which were argued together and incorporated each other's contentions.
[4] The Defendants do not challenge jurisdiction or venue in any of the cases currently before this Court. Nonetheless, this Court does find that jurisdiction in both matters is proper pursuant to G.L. 1956 § 8-2-14, and that venue is proper pursuant to G.L. 1956 § 9-4-5.
[5] In Kedy, the Supreme Court was persuaded that the private-and public-interest factors supported the dismissal of the thirty-nine Canadian cases before it, even after considering the strong interests of the plaintiffs in choosing their forum for trial. Id. at 1186. In its analysis, the Kedy Court found that Canada provided an available and adequate alternative.Id. The Court noted that the first prong of theforum non conveniens test was met because the plaintiffs in the case agreed that they could file their claims in Canada; the rules of discovery were not so different as to bar complete recovery; legal remedies were available in Canada; and the defendants agreed to waive any statutes of limitations defenses in the alternative forum. Id. at 1186-87. As for the private interest factors, the Court noted that neither the plaintiffs nor defendants were residents of Rhode Island, that the witnesses (including experts), workplace sites, and other evidence were not located in this State. Id. at 1187-88. The Court further noted that "only Canadian courts, not courts within the United States, have legal power to compel the testimony [of Canadian witnesses]." Id. at 1188 (quoting Howe v. GoldcorpInv., 946 F.2d 944, 951 (1st Cir. 1991)). The Court concluded that the private interest factors weighed in favor of dismissal "counterbalanc[ing] the deference to which plaintiffs' choice of forum is entitled." Id. Finally, in evaluating the public-interest factors, our Supreme Court accepted this Court's finding that asbestos litigation has not congested Rhode Island courts, but found that the Rhode Island jury could be encumbered with a complex trial that had no connection to this State, and that the likely application of Canadian law would place "additional, though not insurmountable, burdens upon our courts."Id.
[6] Ms. Downs has since died.
[7] The Defendants in the Downs matter contend that the statute of repose in Nebraska would bar this litigation. Were this Court to dismiss the Downs case for forum nonconveniens, Defendants' voluntary waiver of that limitation would be a requirement, as would the waiver of any applicable statutes of limitations in both of these matters. This Court's finding that the alternative forums are available and adequate assumes, arguendo, that such waivers would be made. For the reasons discussed below, however, this Court will not dismiss these matters. This note is made merely for clarity in this Court's discussion of the first prong of the Kedy analysis.
[8] This Court pauses to note the resoundingly similar sentiments expressed recently by the Supreme Court of Texas in a case involving a Maine resident plaintiff who sued General Electric and over twenty other companies — three of which were based in Texas and which were allegedly involved with asbestos activities — in Texas for alleged asbestos exposure at a Maine jobsite. In granting the motion to dismiss for forum non conveniens, the court noted, among other factors, that "absent some overriding consideration, the city of Texas should not be burdened with jury duty in a complex asbestos exposure case that has no relation to Texas." In reGeneral Elec. Co., 271, S.W. 3d at 691.
In another asbestos litigation matter, of the thirty-six plaintiffs, eighteen were from out-of-state and did not work reside, or have any connection with the Holmes County forum. In dismissing that case, the Supreme Court of Mississippi stated:
 "Holmes County lacks the required interest in the wholly out-of-state appellees' claims, and it would be a waste of judicial resources if tried in Mississippi. . . . The courts of Mississippi will not become the default forum for Plaintiffs seeking to consolidate mass-tort actions. To allow otherwise would waste finite judicial resources on claims that have nothing to do with the state. Each trial requires the empanelling of Mississippians as jurors and the use of Mississippi tax dollars. These resources should be used for cases in which Mississippi has an interest." 3M Co., 926 So. 2d at 866.
Finally this Court notes Kinney System, Inc., wherein the Florida Supreme Court declared that "Florida's judicial interests are at their zenith, and the expenditures of tax-funded judicial resources most clearly justified when the issues involve matters with a strong nexus to Florida's interest." Kinney System,Inc., 674 So. 2d at 91.
[9] This Court notes that in the Kroskob case, Lisa Kroskob and Craig Kroskob's depositions are now complete and additional site visits to the Kroskob farm have occurred since the filing of these Motions to Dismiss.